In the Interest of L.M., D.M., and D.M.

**Forestal LAWTON (Juvenile Officer), Respondent,**

v.

**T.A.M. (Mother), Appellant.**

**No. WD 42804.**

Missouri Court of Appeals, Western District.

April 16, 1991.

Kevin Kelly, Independence, for appellant.

Suzanne A. Block, Kansas City, for respondent.

Before NUGENT, C.J., and SHANGLER, GAITAN and BRECKENRIDGE, JJ.

GAITAN, Judge.

This is an appeal from the termination of parental rights pursuant to § 211.447.2 RSMo.1986. The appellant alleges there was insufficient evidence to support that termination. We affirm.

This case involves three siblings, D.M. (boy) age 5, D.M. (girl) age 9, and L.M. (girl), age 7. This family has some history with the Division of Family Services beginning in April of 1987. The parents were hotlined for neglect and inappropriate care of their children. Day care, counseling, and food were provided to the family to prevent removal of the juveniles.

In April 1987, appellant left her husband and went to live with her parents. Because her parents were leaving for a vacation, however, she was required to move. She moved into a house with Mike Downey, her manager at Taco Bell, and a man named Bruce.

In August of 1987, another hotline was substantiated involving physical and sexual abuse. The children alleged physical abuse by appellant's boyfriend, Mike Downey, and the two girls, D.M. and L.M., also alleged sexual abuse by this same man. Bruises were found on L.M. and D.M. (boy) and appellant had no explanation for those bruises. Appellant stated that she was aware that her children and Mike Downey did not get along.

Evidence of sexual abuse, a broken hymen and lesions on the vagina were found on D.M. (girl). L.M. alleged that Mike Downey, appellant, and her grandfather had inappropriately touched her. Appellant had no explanation regarding L.M.'s allegations and, stated that D.M. (girl) might have been abused by a twelve-year-old boy in Oklahoma.

As a result of these hotlines, appellant's denial of the sexual abuse, her lack of explanation for the physical abuse, and her continued residence with an alleged perpetrator, the children were removed. At the time of removal, L.M. had behavior problems and demonstrated inappropriate boundaries with other people. She was also physically aggressive with her siblings. By April of 1988, L.M.'s behavior had deteriorated to the point where she had to be hospitalized. D.M. (girl) stuttered and D.M. (boy) was not yet talking. Day care and counseling were offered to address these needs. The social worker attempted to negotiate two written service agreements with appellant, however, she refused to sign them.

In December 1987, a new social service worker was assigned to the case. She identified the barriers to reunification as appellant's failure to acknowledge that her daughters had been sexually abused and continued contact with Mike Downey, who had admitted to physically abusing the children and allegedly sexually abused L.M. and D.M. (girl). After hearing of these concerns, appellant's response was that her children had not been sexually abused.

Although counseling had been offered since removal of the children in October of 1987, appellant did not begin until January of 1988. In May of 1988, appellant discontinued counseling and refused to disclose her whereabouts to the Division of Family Services until November 1988. In June of 1988, L.M. was placed in a residential facility.

On February 24, 1988, appellant signed a written service agreement. The provisions included appellant's obtaining a psychological evaluation, attending and cooperating with weekly counseling at The Children's Place, obtaining an appropriate residence, and cooperating with the Division of Family Services' worker.

Appellant was sporadic in attending her weekly counseling and did not look for her own home. Appellant made no progress in counseling as she was still not acknowledging that her daughters had been sexually abused. In May 1988, appellant discontinued all therapy. Even after the case

was referred for termination of parental rights, the Division of Family Services continued to offer appellant counseling. On May 31, 1989, appellant signed another written service agreement. The terms of that agreement included attending counseling at The Children's Place, getting her own home, accepting the possibility that her daughters had been sexually abused and that L.M. and D.M. (boy) had been physically abused, learning appropriate disciplinary methods, and informing her social worker of any changes in her living arrangements.

Although appellant had attended counseling under this second service agreement since May 1989, she was still not able to accept the possibility that her daughters had been sexually abused. She also failed to notify her social worker when she moved from a battered woman's shelter in June 1989. She had been staying at the shelter after she left Mike Downey. She told the social worker and her therapist that she was afraid Mike would kill her. She continued to express fear of him several months after leaving the shelter. However, in October 1989 she moved back in with this same man. At the time of the hearing she was still residing with him.

The social worker testified that it was her opinion that appellant had made no progress in learning to protect her children. In fact, appellant told the social worker that the Division of Family Services was brainwashing her children. The social worker testified that with more help for L.M. and D.M. (girl) she saw no problems getting the children adopted. The Division of Family Services' worker recommended that appellant's parental rights be terminated.

The Division of Family Services' worker stated that the problem was not that appellant would not admit Mike Downey was the perpetrator, but rather that she was unable to acknowledge sexual abuse and would, therefore, be unlikely to protect her children from further abuse.

Karen Allen, a counselor at The Children's Place, also testified at the proceeding. Appellant was referred to The Chil-

dren's Place in October 1987, but did not begin attending until May 1988. The main issues were acknowledging that sexual abuse had occurred and maintaining appropriate housing. Ms. Allen testified that no progress had been made in those two areas. Ms. Allen attempted to explain that these circumstances might jeopardize any chance appellant had of getting her children back.

Ms. Allen testified that before joint counseling could take place, the parent must acknowledge what the child had told her and not lead the child to think she wasn't believed. Appellant never reached that point in therapy. In order to address the sexual abuse issue without joint counseling, Ms. Allen and appellant reviewed D.M.'s (girl) therapy notes in which D.M. (girl) repeated that she had been molested by Mike Downey. Appellant was also able to listen to an audiotape in which D.M. (girl) talked about the abuse and stated she wanted her mother to believe her.

Appellant questioned whether it was really D.M. (girl) on the tape or if she had been coached about what to say and if it was Mike Downey or another Mike that D.M. (girl) was referring to. Ms. Allen attempted to counsel appellant about how important it was to the children's progress for appellant to accept what they were saying.

It was Ms. Allen's professional opinion that given appellant's failure to progress in therapy for two years, it was unlikely that her ability to protect her children would improve.

Mike Downey testified that he was currently living with appellant and planned to marry her as soon as she was divorced. He further testified that he had inappropriately disciplined L.M. with a belt, leaving marks. Mike Downey admitted that he had a problem with anger control and had not received any help for this problem.

Upon cross-examination, appellant testified that Mike Downey had threatened to kill her and she was afraid of him. However, she believed that Downey's alcohol and anger control problems had somehow been eliminated without any professional

help. Appellant confirmed that she now has two children by Mike Downey.

Section 211.447 RSMo.1986 [1] allows the juvenile court to terminate the rights of a parent to a child on a finding that one or more of the grounds enumerated in the statute are present and that termination is in the child's best interest. Section 211.-447.2 RSMo.1986. Section 211.447.2(2) allows termination to be based on the original petition under which the child was adjudicated abused or neglected. In addition, the court must consider and make findings as to the conditions enumerated in the relevant subsections. *See* Section 211.447.-2(2)(a–d) RSMo.1986.

On November 15, 1989, the juvenile officer presented his case for termination of the parental rights of appellant and her three children, L.M., D.M. (boy), and D.M. (girl). The attorney for the juvenile officer requested that the court take judicial notice of the legal files of all three juveniles. Those files contained the original petitions and the judgments sustaining those petitions dated December 8, 1987. The judgments found that appellant failed to provide proper care, custody and support for her children in that they were physically abused, allegedly sexually molested by appellant's paramour, D.M. (girl) had injuries consistent with sexual molestation, and appellant permitted the children to reside in the home of a person with a history of sexually molesting children.

The attorney for the juvenile officer then adduced testimony through Jackie Metheny of Division of Family Services that L.M. had sustained multiple marks and bruises as a result of being inappropriately disciplined by appellant's paramour, Mike Downey, and that D.M. (girl) had a partially obliterated hymen and vaginal lesions.

In its judgment of November 16, 1989, the trial court found that the children had been adjudicated abused or neglected and that severe acts of physical and sexual abuse had occurred. This finding is consistent with the requirements of § 211.447.2(2)(c) RSMo.1986.

Appellant complains that the petition for termination of parental rights alleges facts consistent with § 211.447.2(2), but that the court's judgment terminating her parental rights does not rest on those grounds and is therefore invalid. We dis-

---

1. Section 211.447 states in relevant part:
    2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
    (2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
    (c) A severe act or recurrent acts of physical, emotional, or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
    (d) Repeated or continuous failure by the parent, although physically and financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development ...

    (3) ... In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
    (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
    (b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child....
    3. When considering whether to terminate the parent-child relationship pursuant to subdivision ... (2) ... of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
    (1) The emotional ties to the birth parent;
    (2) The extent to which the parent has maintained regular visitation or other contact with the child ...
    (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time....

agree. The court's judgment references the abuse and neglect these children suffered. These acts are consistent with those outlined in § 211.447.2(2)(c) and (d). The trial court is not required to specify the relevant statutory section in its judgment terminating parental rights. "Recitation in the court's order of the statutory basis for its decision is superfluous." *In re H.J.P.*, 669 S.W.2d 264, 271 (Mo.App. 1984).

In addition, "the existence of but one of the statutory grounds is a sufficient condition for termination, provided of course, termination is in the best interest of the children." *Id.* at 273. The legal files of L.M., D.M. (boy), and D.M. (girl) reflected that acts of physical and sexual abuse had occurred. The attorney for the juvenile officer requested that the court below judicially notice those files then adduced evidence that the acts of abuse and neglect were severe. The juvenile officer need show no further evidence of those elements at the termination proceeding. *See In re L.G.*, 764 S.W.2d 89, 95 (Mo. banc), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989).

Section 211.447.3 RSMo.1986, requires that when the trial court is considering termination of parental rights pursuant to § 211.447.2(2), it also make findings as to other enumerated factors, specifically, § 211.447.3(1–7). However, "that statutory section leaves to the trial court's discretion the decision to make findings on the factors it deems applicable to the case." *In re R.H.S.*, 737 S.W.2d 227, 238 (Mo.App. 1987). In its judgment, the trial court found that the children had few if any emotional ties to appellant based on the length of time out of appellant's custody and the limited contact with appellant during that time. The court also found that given appellant's refusal to cooperate with and failure to progress in the services offered between 1987 and 1989, additional services would be useless. Appellant's failure to acknowledge the danger which existed to the children as a consequence of their continued exposure to Mike Downey has a definite impact upon their physical, mental and emotional development. This is certainly a condition from which the court might terminate parental rights. Section 211.447.2(2)(d) RSMo.1986. In fact, the Division of Family Services offered services to appellant after the termination of parental rights petition was filed and informed her that "continued counseling might change the recommendation." Appellant still failed to progress in counseling.

The attorney for the juvenile officer proved the elements consistent with §§ 211.447.2(2)(c) and perhaps (d), as well as 211.447.3(1), (2) and (4), and the trial court's judgment of November 16, 1989, reflected that proof.

Downey's "presence in T.M.'s life" is not "the linchpin of the juvenile authority's case" as appellant suggests. This case rests on the appellant's failure to demonstrate over a two-year period that she could protect her children from further abuse.

In December of 1987, the juvenile officer proved by clear, cogent and convincing evidence that appellant lacked the ability to protect her children. L.M. suffered severe physical abuse while in appellant's care and custody; both L.M. and D.M. (girl) alleged that sexual abuse had occurred while in appellant's care and custody; D.M. (girl) bore the physical scars and L.M. bore the emotional scars consistent with sexual abuse. In 1987, appellant resided with her children in the home of a known sexual abuser, her stepfather. And in November of 1989, appellant resided with Downey, a known physical abuser, a consistently alleged sexual abuser and an individual whom appellant repeatedly claimed to have threatened her life.

The focus of the juvenile officer's petition at both the adjudication and termination phases was not Downey, but appellant, and the choices she made regarding her own safety and that of her children. She failed to produce evidence rebutting the juvenile officer's proof that little had changed since 1987. "Parents must make a commitment to change the course of their conduct which prevents the return of their children." *In re R.H.S.*, 737 S.W.2d 227,

236 (Mo.App.1987) (quoting *In re B.S.*, 710 S.W.2d 27, 29–30 (Mo.App.1986)).

Under § 211.447.2(3)(a–d) RSMo.1986, the court must also "consider and make findings" as to other elements. In deciding whether or not appellant had taken steps to change the potentially harmful conditions which brought her children to the attention of the Division of Family Services and the Court, the trial court in its judgment of November 16, 1989, examined the juvenile officer's evidence as to subsections (a) and (b). It found that appellant had failed to take advantage of numerous counseling services offered by Division of Family Services. She had repeatedly failed to comply with written service agreements. She had only sporadically attended counseling and her most recent therapist, Karen Allen, testified that she had made little or no progress.

Appellant would have this court find that the court below terminated her parental rights solely on the basis of Downey's past behaviors and her continued relationship with him. She asks this court to believe that the passage of time and the birth of two more children, fathered by Downey, righted the wrongs she allowed to be perpetuated on L.M., D.M. (girl) and D.M. (boy) with no effective therapeutic intervention. This is clearly a case where "the mother's dependence on the father and willingness to support him took priority over the best interests of her children." *In re C.M.M.*, 757 S.W.2d 601, 605 (Mo.App.1988).

For the aforesaid reasons, the judgment of the trial court is affirmed.

All concur.

