In the Interest of D.A.H.

David William KIERST, Jr., In the Interest of J.L.A., Respondents,

v.

M.A. (Natural Mother), M.A.H. (Natural Father), Appellants.

Nos. WD 51224, WD 51240 and WD 51241.

Missouri Court of Appeals, Western District.

April 9, 1996.

George D. Halper, Kansas City, for M.A., Natural Mother.

Marc Erickson, Overland Park, KS, William C. Odle, Kansas City, for M.A.H., Natural Father.

Mary A. Marquez, Kansas City, for Respondent David Kierst.

Dale N. Godfrey, Kansas City, for Respondents D.A.H. & J.L.A.

Before ULRICH, P.J., and BRECKENRIDGE and SMITH, JJ.

SMITH, Judge.

Appellants, M.A., the natural mother of D.A.H. and J.L.A., and M.A.H., the natural father of D.A.H., appeal the judgment of the Circuit Court of Jackson County, Missouri, terminating their parental rights. W.B., the natural father of J.L.A., does not appeal. M.A. and M.A.H. have filed separate appeals which have been consolidated.

Appellant, M.A., asserts one point on appeal with three subparts claiming the trial court erred in terminating her parental rights under § 211.447.2(3).[1] Subparts A. and C. attack the sufficiency of the evidence supporting the trial court's termination of parental rights. In subpart B., appellant, M.A., asserts the trial court erred in declaring and applying the law in that it made affirmative findings as to only one subpart under § 211.447.2(3). Appellant, M.A.H., asserts three points on appeal as to the trial terminating his parental rights under § 211.447.2(3):(1) the trial court erred in that it made no statutory finding as to subparagraph (b) under § 211.447.2(3) as to M.A.H.; (2) the trial court erred in that in terminating his parental rights it relied on inadmissible hearsay evidence in making statutory findings under § 211.447.2(3); and, (3) the trial court erred in denying appellant M.A.H.'s motion for writ of habeas corpus ad testificandum denying him the right to testify at the termination hearing in person.

## FACTS AND PROCEDURAL BACKGROUND

M.A. is the natural mother of D.A.H. and J.L.A. and M.A.H. is the natural father of D.A.H. W.B. is the natural father of J.L.A., but does not appeal. D.A.H., a male child, was born on April 20, 1989. J.L.A., a female child, was born on April 17, 1985.

On January 22, 1990, a second amended petition was filed on behalf of J.L.A. and a third amended petition was filed on behalf of D.A.H. Both petitions alleged that on or about September 29, 1989, J.L.A. was taken to Children's Mercy Hospital where she was examined and found to have a malodorous vaginal discharge and an unusually large vaginal opening with the hymen not intact; conditions consistent with sexual abuse. Both petitions also allege that when J.L.A. was examined at Children's Mercy Hospital she was found to have multiple bruises on her thighs and back consistent with physical abuse. The children's mother, M.A., could offer no credible explanation for either the apparent sexual abuse or physical abuse. Further allegations were that the parents lacked adequate parenting skills to provide proper care and supervision for the child and the child would be at risk of harm if placed in their care and custody.

After hearing evidence on these allegations, the juvenile court sustained the petitions and placed the children in the custody of the Division of Family Services (hereinafter referred to as "DFS") on February 23, 1990. The children had previously been detained in DFS's care and custody on October 5, 1989.

---

1. Unless otherwise indicated, all statutory references are to RSMo 1994.

On October 14, 1994, petitions for termination of parental rights were filed and a hearing was held on or about March 22, 1995. The trial court entered its judgment on May 22, 1995, terminating the parental rights of M.A., M.A.H. and W.B. as to J.L.A. and D.A.H. This appeal arises from that judgment.

At the termination of parental rights hearing, Dr. Gregory Sisk, a licensed psychologist, testified that he performed psychological evaluations on M.A. in November 1989 and in September 1994. Dr. Sisk diagnosed M.A. at borderline intellectual functioning as to specific family circumstances in 1989. Poor parenting skills constituted part of the specific family circumstances. In the parenting inventory M.A.'s scores were below average. She scored very low in two areas and received the lowest scores possible in the other two areas. These scores predict that children in her care could be at risk of abuse or neglect due to her beliefs about child rearing.

In her evaluation in 1994, M.A. showed improvement in all areas, but two of the four areas were still below average. In Dr. Sisk's opinion, it was still questionable whether M.A. could effectively parent children. When he asked M.A. about how J.L.A. was sexually abused, she was still unaware that J.L.A. had alleged that M.A.H. had sexually abused her. M.A. stated that she probably would not believe it even if J.L.A. told her that M.A.H. had sexually abused her. She also took no responsibility for separation from her children. Dr. Sisk found that "[M.A.'s] scores predict that based on her beliefs children in her care would be at risk of abuse and neglect aside from any background historical data." Dr. Sisk also saw no change in his finding that M.A. would be an easy parent for a child abuser to victimize between the 1989 and 1994 evaluations.

In November 1989, Dr. Sisk conducted an evaluation on M.A.H. and diagnosed him as mildly mentally retarded with anti-social personality disorder. Dr. Sisk found that three out of the four areas on his parenting inventory were the lowest scores one could possibly get. In the area of alienation on the Personality Screening Inventory, M.A.H. got a score of 87. The questionnaire notes that psychiatric in-patients have a mean of about 70 on that scale and M.A.H.'s complaints reached a level that was as high as people who were admitted to inpatient units for treatment. Dr. Sisk stated "he should not be overlooked as a suspect in [J.L.A.'s] abuse."

J.L.A. was referred to Ms. Twila Hindery, a licensed clinical social worker, for individual therapy in December 1991. About a year after beginning her work with J.L.A., Ms. Hindery began seeing M.A. for individual therapy and added a family therapy component to include both M.A. and M.A.H. about six months later. The family therapy dealt with issues such as household management, making the home safe and protective, sharing the duties at home, honesty, excessive alcohol consumption by M.A.H. and the sexual abuse of J.L.A. At the hearing, Ms. Hindery said "... if [M.A.] would be confronted with that [protecting her children from sexual abuse] I would say that there would be a 50/50 chance she couldn't follow through with it because of the dependent personality." During the one year period that Ms. Hindery worked with M.A., she made progress in identifying dangerous situations around the home. At the completion of counseling, Ms. Hindery felt that M.A.H.'s alcoholism and M.A.'s physical and emotional inability to protect her children were the major barriers to reunification. She further testified regarding her recommendation for reunification, "... both M.A.H. and M.A. were working at the maximum, at their maximum potential that it would be right on the line as if they could do it or not. Then after [M.A.'s] difficulties there just wasn't any doubt in my mind, that it would be just too overwhelming and it couldn't be done, and have the kids be protected and get what they need from life."

Melissa McMasters, a social worker for DFS, testified that she was assigned to this case on May 22, 1991, and remained the social worker at the time of trial. Ms. McMasters listed a number of barriers to reunification which she identified when she received the case. Those barriers included: (1) J.L.A. stating that M.A.H. was the abuse perpetrator; (2) concerns regarding parenting as evidenced by M.A. leaving J.L.A. on a

regular basis with an older lady who was an epileptic, for the purpose that J.L.A. could care for this older lady (J.L.A. was four at the time); and, (3) another child in the home had medical problems and required special attention and care.

Ms. McMasters made a total of four referrals for the parents including referrals to Ms. Hindery for counseling and to Parents As Teachers. She testified that after Ms. Hindery terminated services, M.A. was pretty consistent that she did not want services until Dr. Sisk's assessments. After the last assessment, M.A. began counseling with Chris Austin, approximately one month before the trial.

Ms. McMasters testified that her first objection to returning the children to the home was that "J.L.A. has consistently and clearly stated for the past four and a half years that I have known her that she was sexually abused and that the alleged perpetrator was M.A.H. And M.A. has been consistent in stating that she did not believe M.A.H. was the perpetrator and would not protect J.L.A." She further testified that if M.A. did not live with M.A.H. and directly addressed the issue of sexual abuse of J.L.A., that would impact her position. Ms. McMasters set up counseling for M.A.H. with Mr. Jim Roberts, but M.A.H. attended only one or two sessions.

M.A. had surgery for removal of a brain tumor and now has slurred speech and walks with a walker. She is physically unable to intervene when the children fight or keep them from coming and going at their whim. Ms. McMasters noted that the children do not really have a bond with M.A.

M.A.H. testified by phone from the county jail. He stated that he plans to reunite with M.A. when released from jail. He also testified that he has been arrested and convicted of driving under the influence nine or ten times. He further stated that he did not believe that J.L.A. had been sexually abused. At the time of this trial, M.A.H. was in jail on charges of sodomizing one of his younger children.

The trial court entered its order terminating the parental rights of M.A., M.A.H., and B.W. on May 22, 1995. Notice of this appeal was filed on June 14, 1995.

## STANDARD OF REVIEW

Juvenile proceedings are governed by the practices and procedures customary of proceedings in equity for purposes of appellate review. *In re S.C.,* 914 S.W.2d 408, 411 (Mo.App.1996). The trial court's order is the judgment from which the appeal was taken. § 211.261; Rule 120.01. The trial court's decision will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the sufficiency of the evidence, this court views the facts presented in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment. *In re S.C.,* 914 S.W.2d at 411.

The paramount concern in any termination of parental rights proceeding is the best interest of the child. *Id.* The state must prove its case by clear, cogent and convincing evidence. *Id.* This burden is met only when the evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true. *Id.*

## I.

In her sole point on appeal, appellant, M.A., asserts in subparts A. and C. that there was insufficient evidence to support the trial court's statutory findings terminating her parental rights under § 211.447.2(3). In subpart B. of her claim she asserts the trial court incorrectly declared and applied the law in terminating her rights having found in the affirmative only one subparagraph under § 211.447.2(3). Logically we will address her claim in subpart B. first.

### A. Affirmative Finding as to Only One Subparagraph of § 211.447.2(3)

When determining whether to terminate parental rights under § 211.447.2(3), the court is required to consider and make

findings as to four specified conditions or acts of the parent as found in subparagraphs (a) thru (d). § 211.447.2(3). When the subject matter of any of said subparagraphs is not relevant to the disposition of this cause, a finding should be made to that effect stating why a given subparagraph is not relevant. *In re S.C.*, 914 S.W.2d at 411; *In Interest of J.M.*, 789 S.W.2d 818, 822 (Mo.App.1990). Although the trial court is required to consider and make findings as to all four subparagraphs of § 211.447.2(3), proof of one subparagraph is sufficient for termination of parental rights. *In re S.C.*, 914 S.W.2d at 411; *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 170 (Mo.App.1989).

Here, the record reflects that the trial court considered and made findings as required by § 211.447.2(3) and found that termination was supported under subparagraph (b). In that regard, the trial court's judgment contains the following language:

The Court finds by clear, cogent and convincing evidence that the child has been under the jurisdiction of the Family Court for a period of over one year and conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parents in the near future. Further, the continuation of the parent-child relationship greatly diminishes this child's prospects for early integration into a stable and permanent home. Specifically, the mother has been diagnosed with Organic Mental Disorder Not Otherwise Specified and Specific Family Circumstances—Poor Parenting which significantly impairs the mother's ability to provide long-term care for the child. The Court further finds that the mother has neglected and refused to attend family and individual counseling and parenting classes, failed to maintain visitation with the child and generally failed to work toward reunification.

The Court makes no findings on subsection (a) of Section 211.447.2(3), as there was no evidence adduced to support the existence of those factors in the instant matter.

The Court further finds that the Division of Family Services made reasonable efforts to aid the mother on a continuing basis in adjusting her circumstances and conduct to provide a proper home for the child, but that those efforts were a failure.

The Court makes no findings with respect to subsections (c) and (d) of Section 211.447.2(3) as there was no evidence adduced to support the existence of those factors in the instant matter.

From the record, we find the trial court considered and made findings as to all four subparagraphs of § 211.447.2(3) as required. Further, we find it made an affirmative finding as to subparagraph (b) which was sufficient to support a termination of parental rights under § 211.447.2(3). As such, the trial court did not incorrectly declare or apply the law as asserted by appellant, M.A.

### B. Sufficiency of the Evidence

■ Section 211.447.2(3)(b) requires the court to consider the success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child. We find the record contains clear, cogent and convincing evidence sufficient to support termination under subparagraph (b) as concluded by the trial court.

Parents must commit to change the course of their conduct which prevents the return of their children. *In Interest of L.M.*, 807 S.W.2d 195, 199 (Mo.App.1991). A mother's denial of sexual abuse as to her daughters, her lack of explanation for the physical abuse, and her continued residence with an alleged perpetrator was sufficient evidence of her failure to demonstrate over a two-year period that she could protect her children from further abuse. *Id.*

Since removal of D.A.H and J.L.A. from the home, the following services were available to the children and parent(s): (1) foster home placement; (2) psychological evaluations of M.A. and M.A.H.; (3) referral of M.A. and M.A.H. for sex abuse counseling; and, (4) referral of J.L.A. for developmental evaluation. The evidence reflects that ac-

cording to a follow-up psychological evaluation, appellant M.A.'s parenting skills were still below average five years after J.L.A. and D.A.H. were placed in DFS's custody. Her scores had improved in all areas, but overall they improved very minutely as evidenced by one area where the score only improved from two to three on a ten point scale.

Dr. Sisk saw no change between 1989 and 1994 in his finding that M.A. would be an easy parent for a child abuser to victimize. Ms. Hindery also testified that there would be a 50/50 chance that M.A. could not protect her children from abuse due to her dependent personality. Evidence was presented at the hearing that appellant M.A.H. was in the Jackson County Detention Facility at the time of this hearing on charges of sodomizing one of his and M.A.'s younger children. She further testified that after M.A.'s physical difficulties, reunification would just be too overwhelming and could not be done if D.A.H. and J.L.A. were to be protected and get what they need from life.

The record further reflects that M.A. had left J.L.A., who was four at the time, on numerous occasions to care for an older lady who was an epileptic. She has consistently denied for over four years that M.A.H. was the sexual perpetrator of J.L.A. and her handicaps prevent her physically from exerting sufficient parental control over children in her care. Additionally, D.A.H. and J.L.A. do not have a bond with M.A.

The record is replete with evidence in support of the termination of M.A.'s parental rights as to D.A.H. and J.L.A. She has not been able to overcome her lack of ability to protect her children from abuse as evidenced by the fact that appellant M.A.H. is currently in jail for sodomizing one of their younger children. M.A. still denies that M.A.H. is the sexual abuse perpetrator of J.L.A. She had no credible explanation for the sexual or physical abuse discovered when J.L.A. was taken to Children's Mercy Hospital. These actions are in accordance with the scores she received on her parenting skills assessment which increased only minutely over the past five years.

We find there was sufficient evidence for the trial court to terminate appellant M.A.'s

parental rights pursuant to § 211.447.2(3)(b) because DFS's efforts have failed to aid M.A. on a continuing basis in adjusting her circumstances or conduct to provide a proper home for D.A.H. and J.L.A. and the potentially harmful conditions warranting removal still exist.

Point denied.

## II.

▉ Appellant, M.A.H., asserts in his first point that the trial court erred in finding statutory grounds for termination of parental rights under § 211.447.2(3) because the court found that no evidence had been adduced to support a finding on § 211.447.2(3)(a), (c) and (d) and the court failed to make any finding on § 211.447.2(3)(b) as to appellant M.A.H.

In determining whether to terminate parental rights under § 211.447.2(3), the court is required to consider and make findings as to four specified conditions or acts of the parent as found in subparagraphs (a) thru (d). § 211.447.2(3). The court must make a finding as to all four subparagraphs even after they find one in the affirmative which would be sufficient to support termination. *In re Interest of E.K.*, 860 S.W.2d 797, 799 (Mo.App.1993). The court in *In re Interest of E.K.* remanded the cause with directions that the trial court consider the record and enter the appropriate required findings because the record did not contain findings, affirmative or negative, as to (b), (c), or (d) of § 211.447.2(3) even though an affirmative finding as to (a) supported termination. *Id.*

In its judgment terminating the parental rights of the father, M.A.H., the trial court made the following findings:

The Court makes no findings on subsection (a) of Section 211.447.2(3), as there was no evidence adduced to support the existence of those factors in instant matter.

The Court further finds that the Division of Family Services made reasonable efforts to aid the mother on a continuing basis in adjusting her circumstances and conduct to provide a proper home for the child, but that those efforts were a failure.

The Court makes no findings with respect to subsections (c) and (d) of Section

211.47.2(3) as there was no evidence adduced to support the existence of those factors in the instant matter. (**emphasis added**).

Although the second paragraph is not labeled as a finding as to subparagraph (b) of § 211.447.2(3), it employs the identical language of the subparagraph and is obviously inserted between findings as to subparagraphs (a) and (c). There can be no doubt that the trial court intended the second paragraph to be its finding as to subparagraph (b) of § 211.447.2(3). Without explanation, the paragraph refers to the mother, M.A., instead of the father, M.A.H. Thus, the trial court made no affirmative finding under § 211.447.2(3)(a-d) as to the father in support of termination of M.A.H.'s parental rights as required.

"This court is not in a position to overlook the clear statutory mandate that 'the court **shall** consider and make findings . . .' as to subparagraphs (a) through (d)." *In Interest of J.M.*, 789 S.W.2d at 822; § 211.447.2(3). Inasmuch as the trial court made no finding regarding M.A.H. as to subparagraph (b), we must reverse and remand to the trial court with directions that it consider the record and enter findings with respect to subparagraph (b) of § 211.447.2(3) as to appellant M.A.H.

Because this point is dispositive of the appeal, we do not reach appellant's remaining two points on appeal.

### CONCLUSION

We affirm the trial court's judgment terminating appellant M.A.'s parental rights as to D.A.H. and J.L.A. We reverse and remand as to the trial court's judgment terminating appellant M.A.H.'s parental rights as to D.A.H., with directions to consider and make a finding as to § 211.447.2(3)(b) as to appellant, M.A.H.

All concur.