In the Interest of J.A.R., Plaintiff.

**JUVENILE OFFICER, Respondent,**

v.

**A.R. (Natural Father), Appellant.**

No. WD 54392.

Missouri Court of Appeals,
Western District.

May 12, 1998.

Laurie Vaskov Snell, Kansas City, for appellant.

Kyla Grove, Kansas City, for Guardian Ad Litem.

Robert M. Schieber, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

A.R. appeals the termination of his parental rights to his daughter, J.A.R. He alleges that the trial court improperly admitted a Division of Family Services (DFS) report for the purpose of determining whether one of the statutory grounds for termination existed, rather than solely for the proper purpose of whether termination was in the child's best interest. Father also claims that there was insufficient evidence to support termination of his parental rights. Finding no merit to his contentions, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

J.A.R. was born on March 26, 1995, to unwed parents. Because J.A.R. had traces of marijuana in her system and was suffering from drug withdrawal at birth, DFS took J.A.R. into protective custody on March 28, 1995. Several months later, on August 16, 1995, the Juvenile Officer of Jackson County filed a Petition alleging that J.A.R. was without proper care, custody, and support in that her mother abused controlled substances, resulting in J.A.R. being born with traces of a controlled substance in her system. The Petition also alleged that J.A.R.'s father had previously been incarcerated and was currently residing at a halfway house, that his parental rights to another child had been terminated due to abandonment and neglect, and that two of his other children had been under the jurisdiction of the court for several years. On September 26, 1995, the court found that J.A.R. was without proper care, custody, and support and placed her in the custody of DFS. She has remained in DFS custody continuously since that date.

On July 23, 1996, the Juvenile Officer filed a Petition for Termination of Parental Rights seeking to terminate both Mother's and Father's parental rights to J.A.R. The Petition alleged, *inter alia*, that J.A.R. had been under the jurisdiction of the family court for a period in excess of one year, that conditions of a potentially harmful nature continued to exist, that there was little likelihood the conditions would be remedied, and that the continuation of the parent-child relationship greatly diminished J.A.R.'s prospects for early integration into a stable and permanent home. Specifically, the Petition alleged that Mother "has had no contact with the child since March 30, 1995 and has been repeatedly incarcerated and has provided no financial or other support for the care of the child and is unable to provide a stable home for the child." It also alleged that Father had not been in contact with J.A.R. for more than six months and had not provided financial or other support since that time, had failed to attend parenting classes, and had failed to contact DFS to work toward reunification with J.A.R.

After a hearing, the trial judge entered a judgment on April 23, 1997, terminating Father's parental rights under Section 211.447.2(3) on the ground that J.A.R. had been under the family court's jurisdiction for more than one year, potentially harmful conditions continued to exist, and there was little likelihood that those conditions would be remedied so that J.A.R. could be returned to her parents in the near future. The court also found that Father "failed to participate in individual therapy, parenting skills training and generally failed to work toward reunification." The court terminated Mother's parental rights under Section 211.447.2(1) on the ground that she had abandoned J.A.R. "in that for a period of six months or longer

the mother left said child without any provision for parental support and without making arrangements to visit or communicate with the child...." Mother has not appealed the termination of her parental rights and that determination is final. Father has appealed the termination of his parental rights. We address his arguments below.

## II. STANDARD OF REVIEW

We will affirm the trial court's order terminating a parent's rights unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In Interest of D.T.B.,* 944 S.W.2d 321, 322 (Mo.App.1997). We review the facts and all reasonable inferences therefrom in the light most favorable to the trial court's order. *D.T.B.,* 944 S.W.2d at 322; *In Interest of J.M.L.,* 917 S.W.2d 193, 195 (Mo.App. 1996).

## III. ADMISSION OF REPORT

In his first point on appeal, Father claims that the trial court improperly relied on a report prepared by DFS. Father argues that the report contained hearsay which should not have been used as substantive evidence for the purpose of establishing the statutory grounds for termination.

Section 211.447.2 provides that the juvenile court may terminate a parent's rights if it finds both that termination is in the best interests of the child and that one or more statutory grounds for termination exist. § 211.447.2.[1] "The court may reach the issue of the best interests of the children only after it has made a determination that one or more of the statutory grounds for termination exists." *In Interest of M.H.,* 859 S.W.2d 888, 896 (Mo.App.1993). In termination cases, except those conducted upon the consent of the parent, the court must order an investigation and social study to be made by the juvenile officer, by DFS, or by an agency licensed to care for children and the resulting "written report shall be made to the court to aid the court *in determining whether the termi-*

*nation is in the best interests of the child."* § 211.455.3 (emphasis added).

At the hearing on the termination petition, the attorney representing the Juvenile Officer offered into evidence Exhibit Number 2, which was a termination of parental rights study prepared by Jennifer Smith, a social service worker for DFS. Father's counsel objected, stating:

Your Honor, I object to the admission of the juvenile study to the extent that it should not be used to weigh against the statutory grounds for termination. Missouri case law is clear that the juvenile study can be considered for determining the best interest of the child.

I would like to object to any use of the juvenile study with respect to the statutory grounds for termination because the juvenile study is hearsay. It doesn't satisfy the business records exception to hearsay in that it was not prepared at the time of the events it records.

Specifically I—if the Court would be interested in entertaining this, I know that several aspects of the juvenile study contain hearsay within hearsay. Even if it did qualify as a business record I think it would be inadmissible for those reasons.

Counsel for the Juvenile Officer responded that the report was admissible, pursuant to statute, for the purpose of determining the best interests of the child. She also pointed out that any hearsay concerns were alleviated because the witnesses were present to testify to matters within their personal knowledge. The court overruled the objection, but informed Father's counsel that if he had "specific objections as you go, well, go ahead and object."

On appeal, Father again argues that the social worker's report was admissible only to aid the court in determining whether termination of Father's rights was in J.A.R.'s best interests, and asserts that the court below erroneously also relied on it to establish one of the statutory grounds for termination.

We agree with Father that *In re S.P.W.,* 707 S.W.2d 814 (Mo.App.1986), and similar cases have held that the Section 211.455.3

1. Unless otherwise indicated, all statutory references are to Missouri Revised Statutes 1994.

does not itself authorize the court to use the social report to determine whether one of the statutory grounds of termination exists, and that unless another ground for admission exists for all or part of the report, it should be considered by the court only on the issue of whether termination is in the best interests of the child. The mother in *In re S.P.W.* similarly argued that the court erred in admitting the social files on each of the children. The mother argued that a hearing for termination of parental rights should be bifurcated and the social worker's report considered only after the court has decided that statutory grounds for termination exist.

Although this Court rejected the suggestion that the hearing should be bifurcated, we did hold that the social worker's report was admissible only on the issue of whether termination is in the best interests of the child and is not admissible on the issue of whether there are statutory grounds for terminating the parent's rights, stating:

> In such termination cases, the first concern of the trial court is to focus on the issue of the severance of the parent's personal rights.... All the rules of evidence strictly apply. The severance of the parent-child relationship is an exercise of awesome power which requires literal compliance with statutory authority.... The social reports would not be admissible in connection with this first concern of the court unless they were properly qualified.
>
> . . . .
>
> In termination cases, the second question for the court is whether termination of parental rights is in the best interest of the child. In connection with that issue, the court may consider the social report prepared pursuant to § 211.472.[2]

*Id.* at 820.

Father claims that "[t]he Court undoubtedly relied on the Exhibit that was accepted by the Court into evidence to find grounds to terminate the parental rights of [Father]." As support, Father states that the court's judgment contains findings based on information contained in the social worker's report. That information was also contained in the in-court testimony of Ms. Smith, the social worker for DFS, and Mark McCarthy, the counselor to whom Father was referred by DFS, however. Father seems to argue that if the social report could not be used to support a finding that a ground for termination exists, then neither could the in-court testimony of these witnesses be used for that purpose. Father cites nothing to support that argument, however, and we do not find it meritorious.

■ The testimony of Ms. Smith and Mr. McCarthy was independently admissible. It was not hearsay and Section 211.455.3 does not purport to state that social workers cannot testify in person on issues relevant to whether grounds for termination exist. Indeed, such a statute would make no sense, for social workers often will have very relevant information on issues relevant to termination. The fact that some of the information they testified to was relevant to both issues before the court and overlapped with some of the evidence in the social report does not call for a different result. "Trial judges are perfectly capable of receiving some evidence for one purpose and not another." *S.P.W.*, 707 S.W.2d at 820. Moreover, on appeal, this Court presumes "the trial judge, as the trier of fact, was not prejudiced by any inadmissible evidence and was not influenced by such evidence in reaching his decision." *State v. Clay*, 909 S.W.2d 711, 716 (Mo.App.1995). Finally:

> While it is thus clear that a termination order must be grounded upon two technically distinct determinations—one, that termination is in the best interest of the child and two, that one or more of the specified grounds exists—it should be equally clear that these determinations cannot as a practical matter be based upon wholly separate considerations. Indeed, it is difficult to imagine a need for judicial inquiry into a child's best interest apart from consideration of such particular circumstances as would give rise in the first instance to some question whether that interest would be served by termination.

2. Section 211.472 was then the equivalent of current Section 211.455.

*In Interest of H.J.P.*, 669 S.W.2d 264, 271 (Mo.App.1984). Here, there is no evidence that the trial court failed to properly limit its consideration of the social report, and the evidence of the witnesses was relevant to both the determination whether grounds for termination existed and the determination whether termination was in the child's best interests.

## IV. SUFFICIENCY OF THE EVIDENCE

█ Father also argues that, without consideration of the evidence contained in the social report, there was insufficient evidence to support a finding that one of the grounds for termination of parental rights existed. We disagree. There was ample other evidence to support a finding of the existence of one of the statutory grounds to terminate Father's parental rights to J.A.R.

At the hearing on the petition, Ms. Smith and Mr. McCarthy both testified as to matters with their own personal knowledge. Ms. Smith testified that since she had first been assigned to J.A.R.'s case in November 1995, Father's housing situation had been unstable and he had lived in three different residences. These residences needed repair and Ms. Smith considered them unsafe for a child. Father had no visits with J.A.R. between December 8, 1995, and March 15, 1996, and failed to keep scheduled appointments to visit her. Father also failed to attend parenting classes, as called for by his written service agreement, even though Ms. Smith gave Father several options as to the location of these classes. From May 1996 to October 1996, Father did visit with his daughter. Ms. Smith was present during those visits and testified that Father did not display appropriate parenting behavior. He had problems disciplining his daughter and would look to either Ms. Smith or the foster mother to tell him what he should do. Since October 7, 1996, Father has not made any attempt to request visitation with his daughter, has not contacted Ms. Smith to inquire about his daughter's condition, and has not provided any support.

DFS also referred Father to Mr. McCarthy for counseling in May of 1996. Mr. McCarthy scheduled weekly appointments with Father, but saw him a total of only nine times. After attending a few sessions, Father failed to show up for two appointments. Mr. McCarthy rescheduled the appointments twice, but Father failed to arrive for either meeting. Mr. McCarthy attempted to continue the counseling, but Father's attendance continued to be sporadic. Finally, after Father missed an appointment scheduled on August 16, 1996, Mr. McCarthy terminated counseling. During the course of the counseling, Mr. McCarthy had an opportunity to observe Father with two of his other daughters. Mr. McCarthy testified that Father lacked parenting skills, had difficulty asserting himself, and would "disappear" when there was someone else to take responsibility.

Father also testified. He admitted that he had failed to attend parenting classes. He also admitted that he stopped contacting DFS in October 1996, and explained that he did so because he did not want his parole officer to find him. Father also testified that he had been recently incarcerated for not reporting to his parole officer; this had happened several times before. Father also testified that he had five other children, none of whom lived with him, and all of whom were at one time or another in foster care.

This evidence supported the court below's determination that grounds for termination existed in that J.A.R. had been under the family court's jurisdiction for more than one year, potentially harmful conditions continued to exist, and there was little likelihood that those conditions would be remedied so that J.A.R. could returned to her parents in the near future. The evidence further supported the determination that termination was in J.A.R.'s best interests. Accordingly, we affirm.

HANNA and RIEDERER, JJ., concur.