**In the Interest of V.M.O. and J.O., Plaintiff.**

**Juvenile Officer, Respondent,**

**v.**

**O.O. (Natural Mother), Appellant.**

**Nos. WD 55363, WD 55364.**

Missouri Court of Appeals, Western District.

Jan. 12, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.

Application to Transfer Denied April 27, 1999.

**390**

Kyla Grove, Guardian Ad Litem, Kathleen Jeanetta, Kansas City, for Respondent.

James L. Moeller, Kansas City, for Appellant.

Before RIEDERER, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LOWENSTEIN, Judge.

This is an appeal from the termination of the parental rights of O.O. (Mother), from her two children, V.O., a female born on July 21, 1986, and J.O., a male born on September 7, 1987. Different men were the fathers, neither of whom appeal termination of their rights. The children had come under the jurisdiction of the court in January 1991, and both had been in foster care since 1994. The petitions for termination were filed in January 1997. Termination was based on § 211.447.2(2), RSMo 1994 (abuse and neglect), and on § 211.447.2(3) (failure to remedy harmful conditions which caused court to exercise jurisdiction).

Evidence favorable to the judgments shows the Mother, now age 47 and unemployed, to have a low I.Q., and responds to pressure with a loss of temper. She may have some brain impairment, and was abused when younger. In years well prior to the petition for termination, both psychologists and therapists recommended short, simple visits by the Mother with the children, preceded by extensive coaching. In January 1996, Dr. Roosa said: "Long contact full of reality appears beyond her capacity." She had been hotlined several times in 1990 and, as stated above, the children were first taken into protective custody in January 1991. In fact, she was first involved with DFS in 1987 when she was hotlined for hitting V.O. She received case management from 1987 through April 1990, when the hotline calls started again. She has had numerous evaluations since 1991, with many attempts to reunite her with her children. V.O. and J.O. were returned to her in 1992, but, after additional hotline calls, the girl was removed in 1994. Her boy, J.O., after a return, was taken from her custody again in 1994 after she cussed and screamed at him. J.O. suffers from asthma, which is made worse by anxiety. The state has provided Mother with anger counseling and home services over the years. Mother was hospitalized in Western Missouri Mental Health Center for problems in dealing with anger. Mother lives alone, and takes a wide variety of medications. Her visits with the children have been supervised—she admits to past overuse of physical punishment with the two children. There was considerable evidence that during their visits, Mother verbally abused the children, and used inappropriate language, much of her anger directed toward the system and the caseworkers. Much of Mother's anger is a result of her being raped in 1979. Beginning in 1994, she has worked extensively with M.O.C.S.A. seeking help in dealing with the effects of the rape. Evidence from M.O.C.S.A. employees was favorable to Mother with her dedication, improvement, and interest in her children having been noted in letters and testimony. The respondent Juvenile Officer produced substantial evidence that, despite some progress over time, there was evidence O.O's mental problems had become worse, and that she was incapable of parenting. Mother failed to complete the two parenting classes she took. The children were fearful of Mother. Both children expressed a desire to be free of the ties with their mother and the upsetting contacts with her, and to get on with their lives.

The judgments declared there was clear, cogent and convincing evidence under § 211.447.2(2) of the children being abused and neglected, and made the required findings under subsections (a) through (d) that: (1) Mother has a permanent mental condition which is not likely to be reversed, and makes her unable to provide the necessary care, custody and control, and despite numerous services the children can not be safely returned to her; (2) there was no evidence of

chemical addiction; (3) recurrent acts of physical abuse resulted in the children being twice removed from her care, and her loss of control during visits resulted in emotional abuse; and, (4) Mother has failed to provide for the children's physical, emotional and mental needs.

The judgments held under § 211.447.2(3) that the children had been under the jurisdiction of the court for more than a year and that the harmful conditions continue with little likelihood of being remedied at an early date. It held a further continuation of parental rights would greatly diminish prospects for the children to enter a stable home. "Specifically, the mother has failed to progress in treatment despite the delivery of numerous services and the mother had generally failed to work toward reunification." As to the required findings in the section the court found: (a) Mother made little or no progress in treatment despite services, and she has failed to even sign some of the proposed plans; (b) the efforts of DFS have failed; (c) her mental condition is permanent; and, (d) no evidence of chemical addiction.

The judgments made the following required findings mandated in § 211.447.3:(1) there were some emotional ties to the Mother; (2) Mother had maintained regular supervised visits which were eventually terminated because of her inappropriate behavior; and (3) Mother provided no financial or other support; no additional services would be beneficial.

The judgments both concluded it would be in the children's best interests for termination of parental rights.

### SCOPE OF REVIEW

■■■ The decision terminating parental rights will be affirmed if the record contains substantial evidence and reasonable inferences supporting the decision, it is not against the weight of the evidence; and there has been a proper declaration and application of law. *In Interest of W.S.M.*, 845 S.W.2d 147, 150 (Mo.App.1993). Caution will be exercised in setting aside the judgment based on the judgment being against the weight of the evidence, and an appellate court should only set such a judgment aside if there is a firm belief the judgment is wrong. *Id.* An order of termination must be supported by clear, cogent and convincing evidence that at least one of the grounds set out in § 211.447, RSMo 1994 exists, and the termination is in the child's best interests. *Id.* This court will defer to the trial court on issues of witness credibility and choosing between conflicting evidence, and will review the facts and their reasonable inferences in the light most favorable to the trial court's order. *T.S. v. P.S.*, 797 S.W.2d 837, 840 (Mo.App.1990).

### I.

■■■ In her first point, Mother contends the thirty-eight page investigation report, plus an addendum, prepared by DFS worker Wayne Pauley, was improperly used to establish the statutory grounds of § 211.447.2 Section 211.455.3 requires an investigation and social study report be made by the juvenile officer, DFS, or a proper agency, and presented to the court to aid it in determining if the termination is in the best interests of the children. *In re S.P.W.*, 707 S.W.2d 814, 820 (Mo.App.1986). The legislature has required this written report to include such matters as parental background, fitness and capacity of the parents, and the children's present adjustment and their condition, and any other facts pertinent to the determination. This report is to be made available to the parties at least fifteen days prior to the termination hearing. The extensive report prepared here (containing evaluations of five psychologists, eight therapists, and numerous caseworkers) was introduced in evidence over Mother's *hearsay* objection. In this point, Mother contends this report cannot be considered by the trial court until one of the grounds under § 211.447 has first been met. In other words, this report may be used in considering the best interests test, but may not be utilized until one of the § 211.447 grounds has first been established. *In re M.H.*, 859 S.W.2d 888, 896 (Mo.App.1993).

This point was raised recently *In the Interest of J.A.R.*, 968 S.W.2d 748, 750—51 (1998), where this court refused to hold the trial court improperly relied upon hearsay evidence in a similar report to terminate. Even though some of the information in the

report in the case at bar contained some hearsay, Pauley, who had been on this case since 1995, as well as two of the psychologists, several of the previous social workers, and counselors whose names were mentioned in the report, all testified. As said succinctly in *J.A.R.*, the fact that some of the information overlapped between the statutory grounds and the best interests test, does not necessarily render the judge's decision subject to reversal for improper admission of evidence. In these types of cases, juvenile court judges are perfectly capable of receiving some evidence for one purpose and not another, and it is presumed the trial judge was not prejudiced nor influenced by any hearsay or inadmissible evidence in reaching the result. *Id.* at 751. In any event, the Juvenile Officer limited the offer of the report to show only that services were rendered as far back as 1987, not necessarily to the results of those services nor their providers. The point is denied.

## II.

In her next point, Mother asserts there was insufficient clear, cogent and convincing evidence to support a finding of abuse and neglect under § 211.447.2(2)(a-d).[1]

She contends under (a) she was not shown to have a permanent or irreversible mental condition that impaired her ability to parent; under (c) there was insufficient evidence of continued abuse or neglect, and under (d), she "was not at fault for the costs and care of her children...." Although subparagraphs (a)-(d) require findings for a termination pursuant to § 211.447.2(2), if any of them are irrelevant to the particular case, that may be

so stated, but the proof of any of the four conditions is sufficient for termination. *In Interest of S.C.*, 914 S.W.2d 408, 411 (Mo. App.1996).

(a) Doctors Sisk and Roosa testified for the Juvenile Officer. The argument presented is that neither of them could point to any mental condition that would limit her ability to parent. Mother points to portions of Sisk's testimony favorable to her, and further claims his evaluation was made three years prior to the trial. Sisk testified, that based on his evaluations in 1991 and 1994, that Mother had a borderline personality disorder, which is exhibited by anger that affects daily functioning. He testified that she had difficulty focusing on questions and forming an answer to those questions. He saw a decrease in Mother's parenting skills in 1994 compared to his evaluation in 1991, and concluded that the children would be at risk in her care. Roosa had last examined her in 1996, and was the one to suggest "overcoaching" Mother in her supervised visits. Though her problems may stem from a most unfortunate experience in her past, there was sufficient competent evidence to show that Mother's mental condition; i.e., instability, and lack of self control in communicating and punishing the children, would keep her from being able to knowingly provide the children with the necessary care, custody and control.

(c) Mother's custody in 1991, and from 1994 to the date of trial, was taken away due to physical abuse in punishing the children. The opinions of the experts, and the others who dealt with Mother found the same problems persisted through the date the terminations were sought. Social worker Pauley

---

1. § 211.447(2)(a-d)

2. The child has been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the conditions can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody, and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financial able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

testified that the children were afraid of Mother and her violent physical and verbal outbursts. Evidence was presented of Mother's verbal abuse of the daughter, and the son's detrimental physical reaction to visits with his mother. There was sufficient evidence under the statutory standard to support the court's finding under (c). Since two of the subparagraphs have been satisfied, when only one is needed, there is no need to examine the evidence relating to the additional subparagraph, and the point is denied.

### III.

 In her point regarding the count for failure to remedy or rectify as to § 211.447.2(3),[2] Mother asserts the juvenile officer provided insufficient evidence in response to his burden to produce evidence which, "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In Interest of D.A.H.*, 921 S.W.2d 618, 621 (Mo.App.1996).

As in the previous point, she claims evidentiary support was lacking to satisfy any of the subparagraphs. Since the judgment of termination is affirmed under II above, it is not necessary to prove another of additional grounds, but suffice it to say, there was sufficient evidence to support a termination under this section. V.O. and J.O. had been under the jurisdiction of the court since 1991. Conditions which led to the assumption of jurisdiction, verbal abuse and unnecessary punishment still persisted, without likelihood of being remedied so as to allow return of the children to Mother. Visits had been halted at the time of the termination hearing due to Mother's agitating the children. There was testimony that any further delay in continuing to attain reunification would only diminish prospects for integration into a stable home. Under (a) of the subparagraph, there was evidence from numerous witnesses that Mother either failed to sign plans, or failed to significantly improve or remedy any of the problems encountered in the years since the state first became involved with her children. Four psychologists all testified the children should not be in her custody. Although she was trying, and counsel made all efforts to promote her cause, the evidence on this count was sufficient to terminate. *In Interest of D.A.H.*, 921 S.W.2d at 622–23.

### IV.

Mother contends there was insufficient evidence to support the finding under § 211.447.2 that a termination was in the best interest of the children. This point is denied.

Because there is no firm belief the judgments of termination were wrong, they are affirmed. *In Interest of S.P.W.*, 761 S.W.2d 193, 198 (Mo.App.1988).

All Concur.

**2.** § 211.447.2.(3)(a-d)

(3) The child has been under the jurisdiction of the juvenile court for a period of one year and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control; or