849 S.W.2d 608 (1993)
In the Interest of S.J., D.F., Jr., M.F. and R.F., Respondents.
JUVENILE OFFICER, Respondent,
v.
V.F., Natural Mother, Appellant/Respondent, and
D.F., Sr., Natural Father, Appellant.
Nos. WD 46042, WD 46069.
Missouri Court of Appeals, Western District.
March 2, 1993.
*609 Bertica Dominquez-Calbi, Kansas City, for appellant/respondent.
Kevin Kelly, Kansas City, for appellant.
Dale Nathan Godfrey, Kansas City, for respondent.
Lori Stipp, Kansas City, Guardian ad litem.
Before SMART, P.J., and SHANGLER and FENNER, JJ.
FENNER, Judge.
Appellants, V.F. (mother) and D.F., Sr. (father), appeal from the judgments entered by the Juvenile Division of the Circuit Court of Jackson County on February 4, 1992[1] terminating their parental rights over S.J., born July 20, 1978, D.F., Jr., born August 2, 1980, M.F., born April 25, 1982, and R.F., born June 9, 1983.[2]
M.F. and D.F., Jr. were removed from the custody of their parents and detained in the custody of the Missouri Division of Family Services (DFS) on February 26, 1988, pursuant to suspicions of abuse. S.J. and R.F. were removed on March 3, 1988 and also were detained in the custody of DFS. The four children were taken under the jurisdiction of the juvenile court pursuant to petitions filed under section 211.031, RSMo Supp.1992,[3] on March 2nd and 7th of 1988 which alleged, in part, that the children were without proper care, custody, and support in that on or about February 23, 1988, M.F. sustained multiple bruises and similar injuries on his face, back, buttocks, and legs, which injuries were inflicted by his father, D.F., Sr. when he repeatedly struck M.F. with a stick. The petitions alleged further that the children were at substantial risk of abuse if left in the home. On April 13, 1988, the juvenile court sustained the allegations in the petitions after hearing testimony and other evidence, and committed the children to the custody of DFS for placement in foster care.
Petitions for termination of parental rights were filed on behalf of S.J., D.F., Jr., M.F., and R.F. A consolidated termination of parental rights hearing held on February 21, 1991 ended in a mistrial based on the appellants' decision to obtain a divorce. The trial resulting in the termination of appellants' parental rights took place on January 21, 22, and 24, 1992.
During the time between April 13, 1988 and the trial in January of 1992, numerous evaluations were conducted of the four children and appellants. Counselors, therapists, and social workers performed psychological evaluations as well as individual and group counseling on the children. The record *610 reflects that appellants did not comply with services offered by DFS and that, if they did attend counseling, it was on a sporadic basis.
Testimony adduced at trial revealed that S.J., M.F., and D.F., Jr. had been subjected to acts of sexual abuse by D.F., Sr. It further revealed that the siblings had been subjected to repeated acts of physical abuse, including being beaten with a wooden board. Based on the testimony and other evidence adduced at trial, the trial court found that the children had been subjected to deliberate acts of physical, emotional, and sexual abuse which the parents knew or should have known subjected the children to a substantial risk of physical or emotional harm. The court further found that the parents failed to participate meaningfully in counselling, failed to address the dysfunctional family problems, failed to maintain contact with the children, and failed to contribute any financial support to the children since they were taken into protective custody.
The trial court found by clear, cogent, and convincing evidence that the termination of all parental rights of appellants over S.J., D.F., Jr., M.F., and R.F. would be in the children's best interests.

I.
Appellant, D.F., Sr., argues first on appeal that the trial court erred by admitting into evidence testimony from therapists, counselors, psychiatrists, and other witnesses concerning the abuse of the children where there was a doctor-patient privilege and that privilege was not waived. D.F., Sr. argues, in the alternative, that the statute relied upon by the trial court, section 211.459.4, is unconstitutional.[4]
Section 211.459.4 provides that "[n]o legally recognized privileged communication, except that between priest, minister, or rabbi and parishioner, and attorney client, shall constitute grounds for excluding evidence at any proceeding for the termination of parental rights."
Section 210.140 provides:
Any legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required or permitted by sections 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to sections 210.110 to 210.165, or to give or accept evidence in any judicial proceeding relating to child abuse or neglect.
The above statutory provisions illustrate the Missouri legislature's purpose of allowing in all pertinent evidence where a proceeding involves allegations of child abuse or neglect, even though the evidence is otherwise protected by a recognized privilege. As the court stated in Roth v. Roth, 793 S.W.2d 590, 592 (Mo.App.1990):
In keeping with the Supreme Court's broad interpretation of the statute we find § 210.140 prevents a party from invoking the physician-patient privilege in any custody proceedings involving known or suspected child abuse or neglect. The trial court has an affirmative duty in ascertaining the best interests of the child. In order to make a sound and prudent judgment, the judge should be able to have at his/her disposal all available pertinent evidence in determining child custody. The legislature has given to the courts the tools to deal with this pervasive issue of child abuse and neglect and the trial courts should use them.
While the Roth case happens to deal with a child custody proceeding, the statute clearly applies to "any judicial proceeding relating to child abuse or neglect." Furthermore, section 211.459.4 specifically provides that the doctor-patient privilege is not grounds for excluding evidence at a termination of parental rights proceeding. Thus, section 211.459.4, section 210.140, and the Roth court's interpretation of the latter section's language clearly indicate that the doctor-patient privilege is not *611 grounds for excluding the evidence at issue here.
The testimony of the therapists, counselors, psychiatrists, and other witnesses who evaluated the children and appellants, which revealed repeated acts of sexual, physical, and emotional abuse upon the children, was critical to determining the children's best interests and whether termination of parental rights was necessary. The trial court did not err in admitting this testimony into evidence.
Appellant's argument that section 211.459.4 is unconstitutional is without merit. Appellant essentially argues that it is unconstitutional to suspend the right to have the privileged communication excluded in termination of parental rights cases because this violates a litigant's due process rights.
Appellant cites to Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982), for the proposition that the due process rights of a parent in a termination of parental rights trial stem from a balancing of the private interest affected by the proceeding, the governmental interest which supports the use of the challenged procedure, and the risk of error created by the procedure.
The Missouri legislature has made it clear, as demonstrated through the statutes and case law cited above, that protection of the child in abuse and neglect cases is of paramount importance. The statutes have been construed broadly to achieve this purpose. In other words, the governmental interest in protecting children from abuse and neglect clearly outweighs the private interest here.
Appellant, D.F., Sr.'s, first point is denied.

II.
Appellants, V.F. and D.F., Sr., next argue that the trial court erred by admitting into evidence Exhibits 13, 14, and 18 as they contained inadmissible hearsay. D.F., Sr. argues further that exhibits 13, 14, and 18 contained information that was not relevant and material to the issues before the court; contained information from therapists and counselors that should have been excluded for the reasons argued in his first point herein; lacked foundation for admission; and lacked foundation as there was no showing that they were supplied to counsel fifteen (15) days before trial.
Exhibits 13, 14, and 18 are termination studies prepared by social workers from DFS. Section 211.455.3 requires a termination study to aid the court in determining the children's best interests. The exhibits were submitted and received by the trial court pursuant to this statute. The statute states, in relevant part:
The court shall order an investigation and social study. . . . The investigation and social study shall be made by the juvenile officer, the state division of family services or a public or private agency authorized or licensed to care for children or any other competent person, as directed by the court, and a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child. It shall include such matters as the parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination. Parties and attorneys or guardians ad litem or volunteer advocates representing them before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the parties and attorneys or guardians ad litem or volunteer advocates representing them before the court at least fifteen days prior to any dispositional hearing.
We first address V.F. and D.F., Sr.'s argument that the exhibits contain inadmissible hearsay and, thus, should have been excluded.
Admissibility of evidence is a matter within the discretion of the trial court, and absent a clear abuse, an appellate court will not interfere with the trial court's ruling. Oldaker v. Peters, 817 S.W.2d 245, 250 (Mo. banc 1991). In an analogous case involving the termination of parental rights, where appellant argued that the *612 trial court erred in admitting into evidence a DFS report, the court stated that in a court-tried case it is extremely rare for the reviewing court to reverse because of the erroneous admission of evidence where there is sufficient competent evidence to support the trial court's decree. In the Interest of H.J.P., 669 S.W.2d 264, 272 (Mo.App.1984). This being established, we will briefly address the merits of appellants' argument.
In In re S.P.W., 707 S.W.2d 814 (Mo.App. 1986), the court found that the written report prepared pursuant to the statute, now known as section 211.455.3, was properly considered by the trial court in determining whether termination of parental rights is in the child's best interest. Id. at 820-21.
As the court stated, "[t]he statute clearly provides that a written report complying with [section 211.455.3] may be considered by the court in determining whether termination of parental rights is in the child's best interest." Id. at 820. The court further stated that in termination cases, literal and strict compliance with statutory authority is required. Id. at 821.
We find that the trial court acted well within its discretion in receiving into evidence Exhibits 13, 14, and 18, the social reports prepared by DFS workers, pursuant to the mandate of section 211.455.3. Furthermore, even absent these reports, there would have been sufficient evidence to support the trial court's decree so that the admission of these reports would not have been unduly prejudicial.
Appellants' hearsay argument is denied.
Next, we address D.F., Sr.'s contention that the exhibits contained information not relevant and material to the issues before the court.
The decision as to relevancy of evidence is left to the sound discretion of the trial court, and the ruling will be upheld on appeal unless an abuse of discretion is shown. Carlisle v. Kroger Co., 809 S.W.2d 23, 27 (Mo.App.1991). Exhibits 13, 14, and 18, which were submitted pursuant to the mandate of section 211.455.3, were clearly relevant and material to the issues of abuse and neglect. The information contained in the reports detailed incidents of abuse of the children by the parents as well as other observations made by social workers and therapists. The trial court did not abuse its discretion in admitting these highly relevant reports.
D.F., Sr.'s relevance argument is denied.
As to D.F., Sr.'s contention that the exhibits contained information from therapists and counselors that should have been excluded under the doctor-patient privilege, and his further contention that the admission of the exhibits violated his due process rights, we find no merit. Having thoroughly addressed the statutory waiver of the doctor-patient privilege in appellant's point one, no further analysis of D.F., Sr.'s contentions here is necessary and they are denied.
As to D.F., Sr.'s argument that the reports lacked foundation for admission, we note that the determination of whether sufficient foundation was laid for admission of evidence is within the sound discretion of the trial court. Hayes v. Hudson Foods, Inc., 818 S.W.2d 296, 301 (Mo.App. 1991). We find no abuse of that discretion given the considerable testimony of the three DFS workers who wrote the reports.
Finally, we address D.F., Sr.'s last subpoint and argument that the reports lacked foundation as there was no showing that they were supplied to counsel fifteen days before trial.
Section 211.455.3 requires that the reports be made available to the parties and attorneys or guardians ad litem at least fifteen days prior to any dispositional hearing. Courts will not supply missing evidence or give a party the benefit of unreasonable speculative or forced inferences. Schubiner v. Oppenheimer Industries, Inc., 675 S.W.2d 63, 78 (Mo.App.1984). The burden of proof always remains on the party who has the affirmative of the issue. Hautly Cheese Co. v. Wine Brokers, Inc., 706 S.W.2d 920, 922 (Mo.App.1986).
The record reflects that, although counsel for D.F., Sr. objected to the introduction of the DFS reports as not made available fifteen days before trial, he failed to substantiate this objection by pursuing it on *613 his examination of the witnesses who prepared the reports. In other words, appellant failed in his burden of proving that the reports were not made available. He did not even attempt to elicit testimony from the witnesses to substantiate his objection.
Appellant's arguments of lack of foundation are denied.

III.
Appellant, D.F., Sr., argues in his third point on appeal that the trial court erred by admitting into evidence the testimony given by S.J. at the hearing on February 21, 1991 (which hearing resulted in a mistrial) because S.J. was available and not incompetent to testify, and this deprived appellant of his right to cross-examine a witness against him.
It has long been recognized that where a former proceeding is between the same parties involved in a subsequent case and the same issues are litigated, a witness' testimony may be received into evidence if at the time of the second trial a witness is unavailable. Bartlett v. Kansas City Pub. Serv. Co., 160 S.W.2d 740, 742-43 (Mo. 1942). It is not a requirement that the witness be incompetent, just that she be unavailable. The Bartlett court stated that an objection that the witness is not subject to cross-examination is not tenable because the party opponent has had sufficient opportunity to cross-examine at the time the testimony was first given. Id. at 743.
A trial court's ruling as to the availability of a witness is within the discretion of the trial court. Elliott v. Mid-Century Ins. Co., 701 S.W.2d 462, 466 (Mo. App.1985) (citing Orr v. State Farm Mut. Automobile Ins. Co., 494 S.W.2d 295, 299 (Mo. banc 1973)). If a trial court has before it some basis to believe that requiring a child to testify would be detrimental to the child's best interests, it may exercise its discretion in refusing to require the child to testify. J.L.W. v. D.C.W., 519 S.W.2d 724, 731 (Mo.App.1975).
S.J. testified at the hearing on February 21, 1991. D.F., Sr. and V.F. were parties to that hearing and were both represented by counsel. There was ample opportunity for cross-examination, as reflected in the record. Furthermore, the issues litigated concerned the physical and sexual abuse occurring in the home, the same issues litigated in the January 1992 trial.
The record reflects that Dr. Huseni Poonawala, a physician at the Adolescent Care Psych Center at Baptist Medical Center, recommended strongly against S.J. testifying at the January 1992 trial, due to her psychological as well as possible physical problems. At the time of the trial, S.J. was hospitalized at the Adolescent Care Psych Center. The trial judge considered Dr. Poonawala's letter and decided that it would be harmful to S.J. to take her out of the psychiatric ward of Baptist Hospital and bring her to court to testify. Furthermore, he emphasized that S.J.'s former testimony was testimony in this very case, with the same parties and fair opportunity for cross-examination. He concluded that S.J. was clearly unavailable, and received her prior testimony into evidence.
The trial court was within its discretion in allowing in S.J.'s prior testimony. Appellant's third point is denied.

IV.
As his fourth point, appellant, D.F., Sr., argues that the trial court erred in finding that appellant had failed to support his children financially, as unsupported by the record.
Section 211.447.3(3), RSMo Supp.1992, provides that, in determining whether to terminate parental rights, a trial court must consider the financial support provided by the parents to the children for the cost of their care and maintenance, including while the children are in the custody of DFS. In the absence of evidence that appellant is incapable of employment, he can be considered financially able to support his children who are in the custody of DFS. R.L.P. v. R.M.W., 775 S.W.2d 167, 171 (Mo. App.1989). A demand that support be provided is not required to impose upon parents a duty for some responsibility for the support of their children. Id.
The record supports a finding that appellant failed to support his children financially. *614 In the juvenile officer's first set of interrogatories to D.F., Sr., D.F., Sr. provided his employment information since February of 1988. He listed as his jobs: (1) Allied Security, from 4/1/87 to 3/31/88; (2) The Insulating Professionals, from 4/88 to 7/88; (3) Uniguard Security, from 11/88 to 2/89; and (4) Wells Fargo, from 4/89 to 5/89. He also listed the amount of his gross wages: (1) Allied$5,365.90 in 1987 and $5,413.18 in 1988; (2) Insulating $299.00 in 1988; (3) Uniguard$688.00 in 1988 and $2,318.50 in 1989; and (4) Wells Fargounknown. In answer to the question, "Please state the amount, date and payee of each child support payment made by D.F., Sr. for the support of M.F., D.F., Jr., and R.F. since February 25, 1988," appellant responded, "None." Furthermore, Cathryn M. Fisher, a social worker at DFS assigned to this case, testified that appellant, D.F., Sr., provided no financial support for his children, despite the fact that he was employed.
Appellant, D.F., Sr.'s fourth point is denied.

V.
Appellant, V.F., argues that the trial court erred in ordering the termination of her parental rights because there was no substantial evidence to support the decision and the decision was contrary to the weight of the evidence in that the juvenile officer failed to prove by clear, cogent and convincing evidence that she had abused or neglected her children or that the conditions which led to jurisdiction over the children continued to persist and that she had not remedied the conditions so that she could be reunited with her children.
Parental rights may be terminated involuntarily when it appears that the termination would be in the best interest of the child and it appears by clear, cogent and convincing evidence that any one or more of the statutory conditions contained in section 211.447, RSMo Supp. 1992, is met. In re H.K., 762 S.W.2d 465, 467 (Mo.App.1988) (citations omitted). A juvenile court's termination of parental rights will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. Id. at 469. In reviewing the sufficiency of the evidence, the appellate court is urged to act "with caution and with a firm belief that the decree or judgment is wrong." Id. (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01). The appellate court must examine all the facts in the light most favorable to the trial court's decision, and must give due deference to the trial court's ability to determine the credibility of witnesses. In the Interest of Y.M.H., 817 S.W.2d 279, 282 (Mo.App.1991).
Section 211.447.2, RSMo Supp.1992, sets forth the grounds for termination, of which only one or more need exist in order for the court to order termination. The grounds are, in pertinent part:
(1) The child has been abandoned ...
(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition ...
(b) Chemical dependency ...
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to *615 exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child; ... (emphasis added)
The evidence supporting the trial court's decision includes the following: Dr. Barbara Allphin, a physician at Children's Mercy Hospital, evaluated S.J. on March 4, 1988. The evaluation revealed that S.J. had an enlarged hymenal opening, which in Dr. Allphin's opinion was consistent with chronic sexual abuse. Dr. Allphin also examined M.F. on September 9, 1988. This examination revealed venereal warts near the anal area which, according to her testimony, are considered to be sexually transmitted. In Dr. Allphin's opinion, her findings were consistent with sexual abuse.
M.F. was admitted to Spofford Home for Children on September 26, 1989. Margaret Drake, his primary therapist, testified that M.F. told her that his father, D.F., Sr., beat him several times with a large board and left severe bruises on him, hurting him very badly. M.F. also told Ms. Drake that his father threw him up against a wall and hurt his arm so badly that he thought it was broken. According to Ms. Drake's testimony, M.F. said this happened on several occasions. M.F. also said that his father penetrated him anally and that he told his mother about ten times. After the tenth time, his mother, V.F., finally confronted D.F., Sr. about it, at which point D.F., Sr. beat up V.F.
Ms. Drake testified that the parents did not deny physical abuse, but denied sexual abuse. Her testimony further revealed that the parents made very little progress in counseling. During M.F.'s supervised visits with his mother in the spring of 1991, M.F. would talk about his father's abuse and his mother would change the subject and try to ignore it. Ms. Drake stated that V.F. did not visit M.F. while he was in DFS's custody even when she was entitled to do so. Ms. Drake did not recommend reunification with the parents.
Gregory Sisk, a psychologist, evaluated S.J. on November 5, 1991. According to his testimony, S.J. told him that her stepfather, D.F., Sr., had sexually abused her.
Alan Archer, a licensed professional counselor, worked with V.F. and D.F., Sr., starting in March 1988. Mr. Archer recommended that V.F. and D.F., Sr. attend a sexual abuse perpetrators' therapy session with the Metropolitan Organization to Combat Sexual Abuse (MOCSA). The record reflects that in October of 1988, DFS entered into a written service agreement which required that V.F. and D.F., Sr. attend counseling at MOCSA. They only attended one time. Further, they denied that they were perpetrators of sexual abuse.
Mr. Archer also worked with M.F., D.F., Jr., and S.J. He testified that S.J. told him that her stepfather, D.F., Sr., had sexually abused her. D.F., Jr. told him that his father had touched him "in a bad way."
Christine Cannella, a social worker at Charter Hospital and also the director of treatment at MOCSA, testified that V.F. denied physical abuse in the home. She further testified that M.F. had said that his parents touched his penis with a stick, his father touched his penis with a finger, and his father performed oral sex on him. Ms. Cannella stated in her testimony:
My impetus for continuing to recommend termination are two things; one, that the level of, and extent of abuse in the family is very extreme, and very damaging, and these children will be impaired. It's a life-long impairment for these children. . . . *616 The other thing is at least two of the children have pleaded with me personally to not allow them to go back into the environment ...
Chris Austin, a licensed counselor, testified that she counseled appellants starting in October of 1989. However, their involvement was very sporadic. As late as June of 1991, V.F. still had doubts as to whether abuse had occurred.
Appellants' efforts at counselling were minimal and they denied acts of abuse in the home, as evidenced by the testimony of Rex Blevins, a residence case manager at Marillac Center for Children, and Maureen Patton, a family therapist. Furthermore, the record reflects that even when V.F. was able to visit her children after they were taken into DFS's custody, her efforts were minimal at best.
Viewed in the light most favorable to the trial court's decision, we find that there was clear, cogent and convincing evidence that V.F. abused or neglected her children, or that V.F. knew or should have known that such acts of abuse were being committed toward the children. We further find by clear, cogent and convincing evidence that the conditions which led to the assumption of jurisdiction continue to exist and that there is little likelihood that the conditions will be remedied soon so that the children can be returned to appellant in the near future. The trial court did not err in ordering the termination of appellant's parental rights.
The judgment is affirmed.
All concur.
NOTES
[1] Although the cases were consolidated for trial, the trial judge entered four separate judgments, one for each child. Each judgment is basically identical, and the trial court's rationale the same, except for the substitution of the particular child's name in the judgment for that particular child. For purposes of this opinion, the four judgments will be treated as one.
[2] S.J. is the natural daughter of V.F. and the step-daughter of D.F., Sr. The other three children are the natural children of both V.F. and D.F., Sr.
[3] Unless otherwise noted (as in this instance), all statutory references are to RSMo 1986.
[4] Appellants, V.F. and D.F., Sr., filed separate briefs. In his brief, D.F., Sr. alleges four points of error. In her brief, V.F. alleges two points of error, one of which is the same as one of D.F., Sr.'s points of error. Thus, there will be a total of five points of error addressed in this opinion.