**In the Interest of F.A.C. and S.L.C.**

**No. WD 54221.**

Missouri Court of Appeals,
Western District.

July 28, 1998.

Seth Shumaker, Kirksville, for Appellant.

Wallace Trosen, Kirksville, guardian ad litem, Carolyn Kerr, Mo. Div. of Family Services, Jefferson City, for Respondents.

SPINDEN, Judge.

L.C. appeals the juvenile court's judgment to terminate her rights to parent her two daughters, F.A.C. and S.L.C. She contends that the juvenile court erred in permitting the Division of Family Services (DFS) to participate as a party and that the juvenile court improperly denied her request for prepayment of pretrial discovery depositions which prevented her complete preparation for trial. She also challenges the sufficiency of the evidence and complains that, because a psychologist's testimony was not preserved for the record, she was unable to show on appeal how that testimony was not properly admitted. We affirm the juvenile court's judgment.

L.C. first complains that the juvenile court erred in permitting DFS to participate in the hearing to consider the juvenile officer's petition to terminate her parental rights. She argues that no statute or case law authorized DFS' participation. She complains that DFS' participation allowed the government to "double team" her in that the juvenile officer and DFS both made an opening statement, cross-examined witnesses and presented evidence, and "[that DFS] and even aided the juvenile office in [its] case-in-chief."

The juvenile court did not err in overruling L.C.'s objection to DFS' participation. Section 211.459.1, RSMo 1994, mandates that the juvenile court "shall hold the dispositional hearing where . . . any person on whom summons and the petition were served shall have the right and power to subpoena witnesses and present evidence." Section 211.101.1, RSMo 1994, requires the juvenile court to "issue a summons in the name of the state of Missouri requiring the person who has custody of the child . . . to appear personally and . . . to bring the child . . . before the court, at the time and place stated." Rule 110.05.a(18) defines "person" as including "agencies of government." Rule 110.05.a(17) defines "party" to include "the custodian of the juvenile[.]" DFS had legal custody of F.A.C. and S.L.C. It was, therefore, a party with the right and power to subpoena witnesses and to present evidence. *See In Interest of D.L.S.,* 934 S.W.2d 30, 31 (Mo.App.1996).

L.C.'s reliance on *In Interest of D—L— C—,* 834 S.W.2d 760 (Mo.App.1992), is misplaced. That case addressed the limits for foster parents' participation in a termination hearing. The *D—L—C—* court ruled that the foster parents' participation was error because the juvenile court had not confined their role "to presenting evidence relevant to the termination issue." *Id.* at 768. The juvenile court had permitted the foster parents to present evidence of their fitness and desire to adopt the child and this "tend[ed] to inject the false issue of [the foster parents'] fitness to have custody, when the sole issue for determination is the present fitness of the parents to have custody restored to them." *Id.* at 767 (*citing Matter of Trapp,* 593 S.W.2d 193, 205 (Mo. banc 1980)). The case is not applicable to L.C.'s case.

■ In her second point, L.C. asserts that the circuit court erred in denying her motion for prepayment of discovery depositions. L.C. reasons that, because she had a right to conduct depositions and because the juvenile court could have assessed the costs of those depositions against DFS as recognized in *In*

*Interest of J.P.,* 947 S.W.2d 442 (Mo.App. 1997), DFS was obligated to advance her money to pay for the depositions.

The juvenile court enunciated this reason for denying L.C.'s motion:

When are [costs] payable? Costs are ordinarily taxed at termination of legal proceedings. *State ex rel. Eagleton v. Cameron* 384 S.W.2d 627 (Mo.1964). Appointed counsel are held to the same standards to represent their client[s] as any other attorney. But, the need for depositions of every witness in every case is not possible in every case. To be denied an opportunity to depose is not to say that an attorney cannot both zealously and adequately represent his client when the medical records can be obtained, permission to interview the witness obtained, and counsel can cross-examine the witnesses at trial.

Absent a showing that a fundamental right of the mother will be denied, the Motion for Prepayment of fees is denied.

In appealing this ruling, L.C. complains that she "was unable to know what the testimony was going to be from the Juvenile Office's witnesses in support of its petition until trial. [L.C.] could only presume what the evidence was to be[.]"

L.C. does not endeavor to explain why alternative methods of discovery would not have enabled her to prepare for trial. She does not say whether she was unable—or even tried—to interview witnesses in lieu of depositions. She does not describe what evidence she was unable to obtain or what testimony she was prevented from rebutting as a result of the juvenile court's refusal to order DFS to prepay for discovery depositions. L.C. presented five witnesses other than herself and cross-examined each of the opposing witnesses.

■ We find no law—nor does L.C. cite any—requiring or authorizing the juvenile court to order DFS' advancing costs for depositions.[1] Section 211.462.4, RSMo 1994,

---

1. In criminal cases, the Supreme Court has said that "the state is not constitutionally mandated [to provide funds for an independent pathologist to evaluate the prosecution's medical evidence] at public expense. . . . Whether to provide public funds to aid an accused in the preparation of his defense is within the discretion of the trial court." *State v. Holland,* 653 S.W.2d 670, 678

says that court costs "shall be paid by the county in which the proceeding is instituted, except that the court *may* require the agency or person having or receiving legal or actual custody to pay the costs." [2] The statute does not provide for prepayment of costs, and it makes assessment of costs an exercise of the juvenile court's discretion. We discern no abuse of discretion by the juvenile court in refusing L.C.'s request or any significant prejudice to L.C. We reject L.C.'s second point.

L.C. relies heavily on *J.P.*, 947 S.W.2d at 442, to support her contention that the circuit court erred in refusing her motion for prepayment of deposition costs. Her reliance on this case is misplaced. While the *J.P.* court recognized that deposition costs *could be* taxed to DFS in the right situation, it recognized that the decision was a matter of discretion. "[N]o party has an unlimited right to tax deposition expenses as costs[,]" it said. *Id.* at 447.

■ In her third point, L.C. contends that the circuit court erred in terminating her parental rights because the evidence it considered included improperly admitted hearsay. She specifically asserts that the juvenile officer did not lay a proper foundation for the admission of the court-ordered social summaries relating to F.A.C. and S.L.C.

L.C. rests her contention that the juvenile officer did not make a submissible case on the premise that the juvenile court could not consider any evidence presented by DFS witnesses or records authenticated by DFS witnesses because DFS was an improper party. We have already rejected that premise. The court admitted the social summaries as a business record after DFS laid a sufficient foundation. L.C.'s third point fails.

■ In her fourth point, L.C. alleges that, because a tape machine malfunction kept the court reporter from transcribing the testimony of Christopher Maglio, a psychologist who evaluated L.C., she has not been able to establish on appeal that Maglio was not qual-

ified to render an opinion and that the juvenile court admitted his report into evidence without proper foundation. This entitles her to a new trial, she argues, because the juvenile court relied on Maglio's testimony and report in terminating her parental rights.

Although L.C. was not at fault for the machine's malfunction, she was obligated under Rule 81.12(c) to endeavor to find an alternative way to complete the record—for instance, filing a stipulation in lieu of the transcript. *State v. Borden*, 605 S.W.2d 88, 92 (Mo. banc 1980). L.C. fails to direct us to any evidence that endeavored to use alternatives to obtain the substance of the missing testimony.

Of more significance, she supports her argument with mere conclusions:

[T]he evidence elicited from Maglio had not been properly admitted. No proper foundation had been laid for the admittance of Maglio's report and Maglio was not qualified to render such a recommendation of termination. Without the tape and testimony from Maglio, [L.C.] is unable to illustrate how the trial court erred in admitting the reports and testimony from Maglio.

She does not bother to explain, however, why Maglio was not qualified or how DFS failed in laying a foundation for his report. She apparently remembers enough of his testimony to be able to flatly assert that he was not qualified and that DFS did not lay a proper foundation, yet she does not make any effort to share with us the details underlying her legal conclusions.

Exacerbating her sketchy argument is her failure, in violation of Rule 84.04(d), to cite any authority under her point relied on in support of her proposition or explain why she failed to do so. Mindful of the Supreme Court's admonitions in *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978), we deem L.C. to have abandoned the point.

(Mo. banc 1983). Because the fundamental interests at stake in a termination of parental rights case are of similar importance to those at stake in a criminal proceeding and because the constitutional issues in a criminal setting are frequent-

ly evaluated and refined, the analogy is useful in this case.

2. We added the emphasis.

 

*Jordan v. City of Kansas City,* 972 S.W.2d 319, 322 (Mo.App.1998).

We affirm the juvenile court's judgment.

HOWARD, P.J., and BRECKENRIDGE, J., concur.