**In the Interest of A.D.G.**

**No. WD 56377.**

Missouri Court of Appeals, Western District.

May 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Seth Shumaker, Kirksville, for appellant.

Joseph Jay Hemenway, Princeton, Renna Christine Stallings, Bethany, Bryan Round, Kansas City, Theresa Otoole, Parkville, for respondent.

PAUL M. SPINDEN, Judge.

T.J. appeals the circuit court's judgment terminating his right to parent his daughter, A.D.G. Because the weight of the evidence supported the judgment, we affirm the circuit court. We remand the case to the circuit court to determine the amount, if any, of attorney fees to award.

T.J.'s first point is that the circuit court erred in terminating his right to parent A.D.G. because it did not have personal jurisdiction over A.D.G.'s foster mother, R.B. He points out that the transcript referred to the foster mother as R.T., but that the summons and all other correspondence with the foster mother were addressed to R.B. T.J.'s argument that the circuit court lacked jurisdiction over the foster parent is futile because the foster mother appeared in court and testified. *Giddens v. Bankers' Guaranty Life*

Co., 225 Mo.App. 742, 37 S.W.2d 658, 659 (1931) ("service of process upon the right party by the wrong name is good service"). In this case, the correct party received service, appeared in court, and testified. We presume that the court reporter misspelled R.B.'s name. Furthermore, insufficient service to the foster mother would not negate the circuit court's jurisdiction over the child's father.

█ T.J. next argues that the circuit court erred because it did not comply with § 211.455.[1] The statute requires the juvenile officer to meet with the circuit court, within 30 days after filing the petition, to determine whether all parties have been served and to order a home study. Although the record does not contain information about such a meeting, the statute does not require that any other parties receive notice of the meeting. The circuit court did admit a study of T.J.'s home by the Division of Family Services. T.J. does not state how he was prejudiced if, in fact, the meeting did not occur. T.J.'s argument is without merit.

T.J. further complains that the circuit court did not hold a dispositional hearing within 30 days after the circuit court met with the juvenile officer, as required by § 211.459.1. Although we cannot discern whether a meeting between the circuit court and juvenile officer occurred, the circuit court ordered a continuance by agreement of the parties. The docket contains an entry dated March 17, 1998, which said, "All parties appear by respective [attorneys]. By agreement, cases are consolidated, and all motions set for hearing [on] June 2, 1998, at 9:00 a.m." T.J. does not acknowledge the continuance nor explain how it prejudiced him.

█ T.J.'s second point is that the circuit court erred in terminating his parental rights because its judgment was against the weight of the evidence. The circuit court made the following findings concerning T.J.:

The natural father, [T.J.], rejected social service plans and services proffered by the Division of Family Services and has not maintained a stable home or employment and there is no reasonable likelihood the conditions in the home will be reversed.

... [T.J.] has been diagnosed with [p]aranoid [s]chizophrenia by competent evidence and there is no reasonable likelihood the condition can be reversed to enable the natural father to parent consistently. [T.J.]'s mental health issues are in denial and not being treated.

... [T.J.]'s diagnosis of a mental disorder and deliberate acts of a sexual nature against a child that are known to the natural father, but summarily dismissed by the natural father, are conditions of a harmful nature that continue to exist which he knew or should have known subjected the child to substantial risk of emotional and physical harm.

... There is no showing of a substantial chemical dependency of any parent.

. . . .

... The natural father has maintained contact of some regular nature with the child, but there are no true emotional ties to the birth father.

... Neither parent has contributed financial support on a voluntary basis to the extent that they were able.

... Additional services would not bring about a lasting parental adjustment enabling the child to be returned to either parent within an ascertainable period of time. The efforts undertaken by the parents are token in nature and given little weight.

... It is in the best interest of said child that the parental rights of ... [T.J.] be terminated.

█ As grounds for terminating T.J.'s right to parent his daughter, the circuit court cited § 211.447.2(2) and (3), RSMo Supp.1997, which respectively refer to ne-

**1.** *All citations to statutes refer to the 1994 *Revised Statutes unless otherwise indicated.*

glect and failure to remedy the circumstances which brought the child into the custody of the Division of Family Services. Clear, cogent, and convincing evidence of any one statutory ground is required to terminate parental rights. Section 211.447.2; *In the Interest of Gowen*, 610 S.W.2d 319, 320 (Mo.App.1980). We must affirm the circuit court's judgment terminating T.J.'s right to parent A.D.G. "if the record contains substantial evidence and reasonable inferences supporting the decision, it is not against the weight of the evidence; and there has been a proper declaration and application of law." *In the Interest of V.M.O.*, 987 S.W.2d 388, 391 (Mo.App.1999).

T.J.'s argument focuses on whether sufficient evidence supported the circuit court's findings that there was no reasonable likelihood that his mental condition could be reversed and that it rendered him "unable to knowingly provide the child the necessary care, custody and control." Section 211.447.2(2)(a). T.J. points to the testimony of Christopher Maglio, a psychologist, that paranoid schizophrenia could be reversed.

Maglio testified, "Paranoid schizophrenia is what is called a chronic condition, which means it is a life-long condition. It is generally controlled with counseling and with medication." Other evidence indicated that T.J. unilaterally reduced or discontinued prescribed medications "to prove a point." The circuit court appropriately considered T.J.'s mental illness with respect to how it would affect his ability to raise A.D.G. *In the Interest of D.B.*, 916 S.W.2d 430, 433 (Mo.App.1996). Clear, cogent, and convincing evidence supported the circuit court's finding that his mental condition prevented T.J. from parenting consistently.

■ As T.J. argues, mental illness alone does not render a parent unfit. "[S]tatutes authorizing termination on account of mental illness are not intended to punish parents for conditions they cannot avoid but seek only to protect the child." *In re*

*S.P.W.*, 707 S.W.2d 814, 826 (Mo.App.1986) (citing *In the Interest of C.P.B.*, 641 S.W.2d 456, 460 (Mo.App.1982)). Whether the circuit court bases a termination on grounds of abandonment, abuse or neglect, or failure to rectify, § 211.447.3 requires the circuit court to evaluate T.J.'s performance as a parent on several additional factors—from bonding between parent and child to financial child support.

T.J. contests the circuit court's finding that he had not voluntarily contributed to A.D.G.'s support. Social worker Rebecca Shields testified that T.J. paid $25 monthly as child support until September 1996. The circuit court admitted evidence which indicated that T.J.'s child support payments were in arrears by about $8400 through May 1998. Clear, cogent, and convincing evidence supported the circuit court's finding.

T.J. also questions the circuit court's finding that he had refused agreements and services offered by the Division of Family Services. That the circuit court phrased its finding to appear that T.J. rejected multiple written service agreements is inconsequential; there is no requirement that the division offer multiple agreements. T.J. testified that he refused to sign the most recent written service agreement because it demanded that his wife, who is not A.D.G.'s mother, receive treatment as a sexual offender. Stephanie Howerton, a social worker assigned to T.J. at the time of the hearing, stated that T.J. was not using any services the division offered other than seeing a registered nurse who prescribed psychotropic drugs. A thorough review of the record produced ample evidence to support the circuit court's findings that T.J. rejected the division's plan, that his home was an unstable environment, and that such conditions would continue.

■ T.J.'s court-appointed attorney requests an award of attorney fees for his efforts in the appeal. Section 211.462.4 allows an award of attorney fees for the

court–appointed representatives for the child and parents as "court costs." *In the Interest of F.A.C.*, 973 S.W.2d 157, 159–60 (Mo.App.1998). In an action to terminate parental rights, the circuit court should award fees to a court–appointed attorney. *In the Interest of Y.M.H.*, 817 S.W.2d 279, 287 (Mo.App.1991). The circuit court has the expertise and discretion to order fees and to set the amount awarded, even when the award is for services on appeal. *In the Interest of F.A.C.*, 973 S.W.2d at 160; *Trapani v. Trapani*, 686 S.W.2d 877, 878 (Mo. App.1985). We remand to the circuit court T.J.'s motion for attorney fees for perfecting the appeal.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.