169 S.W.3d 152 (2005)
In the Interest of A.H.
Y.O., Appellant,
v.
Barton County Juvenile Office, Respondent.
No. 26477.
Missouri Court of Appeals, Southern District, Division One.
August 11, 2005.
*153 Brandon B. Fisher, Nevada, MO, for appellant.
Jeremiah W. (Jay) Nixon, Atty. Gen., and Nicole L. Loethen, Asst. Atty. Gen., for respondent.
JAMES K. PREWITT, Judge.
Y.O. ("Mother") appeals the termination of her parental rights to her daughter, A.H. ("Child"), born January 6, 2002. Child's biological father, C.H., consented to the termination of his parental rights in November of 2003 and is not a party to this appeal.
Custody of Child was taken by the Division of Children's Services ("Division") on January 14, 2002. On November 20, 2003, the Division filed a Petition for Termination of Parental Rights in the juvenile division of the Circuit Court of Barton County. The petition alleged that Child "has been in foster care for at least fifteen of the most recent twenty-two months" and that Child had been "abused or neglected" in that Mother "was abusing prescription medications and using marijuana during the time period when the child was in her direct care." A hearing on the petition to terminate was held on March 24, 2004. The trial court filed a judgment containing its findings and conclusions on May 10, 2004, and ordered the termination of Mother's parental rights. Mother appeals, *154 presenting eight points relied on. We find Mother's first point to be dispositive.
Point I asserts that the trial court erred in accepting and relying upon a written report compiled and submitted by the Children's Division regarding its investigation and social study, as the trial court failed to comply with the procedure as mandated by section 211.455, RSMo 2000. The statute requires that "within thirty days after the filing of the petition, the juvenile officer shall meet with the court[.]" Here, the record shows no such meeting.
Section 211.455 also states that "[t]he court shall order an investigation and social study" in cases involving the involuntary termination of parental rights and directs that "[t]he investigation and social study shall be made by the juvenile officer, the state division of family services or a public or private agency authorized or licensed to care for children or any other competent person, as directed by the court[.]" In this case, the written report of the "investigation and social study," was prepared by the Children's Division and filed simultaneously with the petition for termination on November 20, 2003. The report was signed by Division personnel on September 30, 2003.
Mother contends that "the completion of these documents [investigation and social summary] without providing the Court the opportunity to select the appropriate, unbiased organization to complete the study[,] prejudiced [Mother]." Mother alleges that "allowing the same entity filing to terminate a parent's rights to complete the investigation and social summary without Trial Court order, and the acceptance of those documents by the Trial Court, was prejudicial error."
The report to which Mother objected is entitled "Investigation and Social Summary." Under "Reason for Placement," the report alleges that Child was found to be in need of care on January 14, 2002, due to Mother's abuse of "prescription medication while providing direct care for [Child] causing her judgment to be impaired leaving [Child] without proper care, custody, or support[.]" The report documents services provided to assist Mother and her efforts to comply with the service plan, as well as visitation schedules, employment and housing histories, counseling and therapy reports, and drug screening test results. Concluding the report, DFS recommended "a petition for Termination of Parental Rights ... be filed and that [Child] be freed for adoption."
The report contained a substantial amount of information unfavorable to Mother and extraneous to the contentions cited by the Division as justification for its continued jurisdiction over Child. In addition to numerous references to Mother's ongoing desire to continue a relationship with Child's father, to which the Division seemingly objected but was not alleged as a ground for termination, the report contained descriptions of incidents involving Mother's allegedly unmanaged anger and reports that Child threw intense tantrums, the cause of which was ascribed to Mother's visitation with Child. Much of this information was provided via narratives written by DFS personnel reporting communications between DFS and various therapists and counselors.
In a January 7, 2004 docket entry, the court noted: "Court will not review the Investigation and Social Summary until testimony presented and admitted as evidence." On January 8, 2004, Mother filed a motion in limine contesting the filing of the investigation and social study prior to the establishment of statutory grounds for termination, claiming that the filing of *155 such report was prejudicial to Mother and requesting an order prohibiting the submission of the report until so ordered by the court. At the termination hearing on March 24, 2004, counsel for Mother objected to the admission of the investigation and social summary, admitted as Exhibit 15, and the court overruled the objection.
In 1959, the General Assembly added seven new sections to chapter 211 (renumbered as §§ 211.441 to 211.511) relating to neglected and delinquent children. In the Interest of T.P.S., 595 S.W.2d 320, 321 (Mo.App.1980). Section 211.491, RSMo 1959, read:
211.491. Social investigation and report to court in termination case.  In all proceedings for termination of parental rights of a child, except in cases where the parents have consented to the termination or have abandoned the child, an investigation and social study shall be made by the juvenile officer, the state division of welfare, or other public or private agency authorized or licensed to care for children as directed by the court and a written report shall be made to the court to aid the court in determining whether the termination is in the best interest of the child, and it shall include such matters as the parental background, the fitness and capacity of the parents to discharge parental responsibilities, the child's home, present adjustment, physical and mental condition and such other facts as are pertinent to the determination.
"In 1978, eight sections pertaining to termination of parental rights were repealed, and eleven new sections `relating to the same subject' were enacted." T.P.S., 595 S.W.2d at 321. Section 211.491 was one such section repealed, and it was enacted as section 211.472, RSMo 1978, which read:
211.472. Social investigation and report to court, contents  access to reports and evaluations. In all proceedings for termination of parental rights of a child, except those filed under subdivision (1) of subsection 2 of section 211.447 ["When the parent has consented in writing to the termination of his parental rights"], an investigation and social study shall be made by the juvenile officer, the state division of family services or other public or private agency authorized or licensed to care for children as directed by the court, and a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child. It shall include such matters as the parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination. Attorneys representing parties before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the attorneys representing parties before the court at least fifteen days prior to the hearing.
Upon its enactment in 1978, section 211.472, RSMo 1978, contained new language providing for access to the written report of the investigation and social study by "[a]ttorneys representing parties before the court." In addition, this section mandated that "all ordered evaluations and reports" be made available to such attorneys at least fifteen days prior to hearing.
Section 211.472, RSMo 1978, was repealed in 1985 and replaced with section 211.455, RSMo Supp.1985. In the Interest of B.M.P., 704 S.W.2d 237, 251 (Mo.App.1986). Section 211.455, RSMo 2000, remains *156 identical to the 1985 enactment and reads:
211.455. Procedure after filing of petition  determination of service  extension of time for service, when  investigation.  1. Within thirty days after the filing of the petition [for termination], the juvenile officer shall meet with the court in order to determine that all parties have been served with summons and to request that the court order the investigation and social study.
2. If, at that time, all parties required to be served with summons have not been served, the court, in its discretion, may extend the time for service if the court finds that service may be forthcoming and that the best interests of the child would be served thereby.
3. The court shall order an investigation and social study except in cases filed under section 211.444 [when parent consents to termination]. The investigation and social study shall be made by the juvenile officer, the state division of family services or a public or private agency authorized or licensed to care for children or any other competent person, as directed by the court, and a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child. It shall include such matters as the parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination. Parties and attorneys or guardians ad litem or volunteer advocates representing them before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the parties and attorneys or guardians ad litem or volunteer advocates representing them before the court at least fifteen days prior to any dispositional hearing.
Further references to this report are found in other sections of the Juvenile Code. Section 211.459 refers to section 211.455, stating, in part: "1. Within thirty days after the juvenile officer and the court have met pursuant to section 211.455, the court shall hold the dispositional hearing...." Section 211.477.1, RSMo 2000, now provides, in pertinent part:
If, after the dispositional hearing, the court finds that one or more of the grounds set out in section 211.447 exists... and that it is in the best interests of the child, the court may terminate the rights of parent in and to the child. After ordering termination and after consideration of the social study and report, the court shall transfer legal custody....
In addition to expanding access of "[a]ll ordered evaluations and reports" to parties, guardians ad litem and volunteer advocates, two new subsections were added. Subsection 1 now mandates a thirty-day time period within which the "juvenile officer shall meet with the court to determine that all parties have been served with summons and to request that the court order the investigation and social study." Subsection 2 allows for an extension of time to serve appropriate parties to termination proceedings.
The written report of the investigation and social study contemplated by section 211.455 is mandatory, In the Interest of T.G., 965 S.W.2d 326, 332 (Mo.App.1998), and is intended to aid the court "in determining whether termination of parental rights is in the child's best interest." In the Interest of S.J., 849 S.W.2d 608, 612 (Mo.App.1993). However, section 211.455 does not authorize the use of the report in *157 determining whether there exists one of the statutory grounds for termination. In the Interest of J.A.R., 968 S.W.2d 748, 750-51 (Mo.App.1998).
A similar issue was brought on appeal previously in In the Interest of A.D.G., 23 S.W.3d 717 (Mo.App.2000). There, appellant contended that the trial court erred in failing to comply with the requirement that the juvenile officer meet with the circuit court within thirty days following the filing of the petition for termination. Id. at 718. There was no resolution reached as to this issue, as the Western District concluded that appellant's argument was without merit because appellant did "not state how he was prejudiced if, in fact, the meeting did not occur." Id.
In construing statutes, generally, "shall" is "used to express compulsion, obligation or necessity[,]" and "mandates an action." State ex rel. Hunter v. Lippold, 142 S.W.3d 241, 244 (Mo.App.2004). This interpretation is not always applied, as it has been held that when a statute provides consequences upon a failure to comply, the statute is mandatory and, conversely, when a statute does not provide consequences for a failure to comply, it is held to be directory. Rundquist v. Dir. of Revenue, 62 S.W.3d 643, 646 (Mo.App.2001). However, "the presence or absence of a penalty provision is `but one method' for determining whether a statute is directory or mandatory." Bauer v. Transitional Sch. Dist. of the City of St. Louis, 111 S.W.3d 405, 408 (Mo.banc 2003), quoting Southwestern Bell Tel. Co. v. Mahn, 766 S.W.2d 443, 446 (Mo.banc 1989). "Indeed, [t]he absence of a penalty provision does not automatically override other considerations." Id. "Whether the statutory word `shall' is mandatory or directory is primarily a function of context and legislative intent." Id. Another consideration in this determination is the effect of ruling one way or the other. Citizens for Envtl. Safety, Inc. v. Mo. Dept. of Natural Resources, 12 S.W.3d 720, 730 (Mo.App.1999).
In cases involving the involuntary termination of parental rights, the Juvenile Code "is a complete code within itself, and proceedings thereunder must be in strict accordance with its terms." In re S M W, 485 S.W.2d 158, 164 (Mo.App.1972). Exercise of the court's power to terminate parental rights must be in accordance with due process as fixed by law, and such a termination is legally effectual only when specified procedures are punctiliously applied. Id.
Prior to the 1985 enactment, there was no direction that the juvenile officer and the court meet within thirty days of the filing of the termination petition. Sections 211.491, RSMo 1959 and 211.472, RSMo 1978 merely directed that an investigation and social study shall be made by the juvenile officer as directed by the court in all proceedings for termination. In statutory construction, a court's primary goal is to ascertain the intent of the General Assembly from the language used, and to give effect to that intent, considering the plain and ordinary meaning of the language employed. In the Interest of C.A.D., 995 S.W.2d 21, 29 (Mo.App.1999). "[T]he presumption is that the legislature did not intend for any part of a statute to be without meaning or effect." In the Interest of R.I.H., 842 S.W.2d 200, 202 (Mo.App.1992).
Here, we consider the inclusion of subsection 1 upon this statute's enactment in 1985 in context with the admonishment that proceedings under the Juvenile Code be punctiliously applied, as stated in S.M.W., supra. In this instance, there was no meeting between the juvenile officer and the court and no direction by the court regarding which agency would be *158 assigned to investigate and prepare the report. The intent of the legislature obviously was not to relegate this decision solely to the Children's Division.
The juvenile court "is a court of limited jurisdiction with only such powers as are expressly conferred by the juvenile code." In the Interest of M.K.R., 515 S.W.2d 467, 470 (Mo.1974). "The legislature has responsibly exercised its prerogative by wisely refraining from vesting juvenile courts with broad, unlimited authority to intervene between parent and child." In the Interest of Dimmitt, 560 S.W.2d 368, 371 (Mo.App.1977). "Severance of the parent-child relationship by act of law is an exercise of awesome power and demands strict and literal compliance with the statutory authority from which it is derived." In the Interest of B.R.S., 937 S.W.2d 773, 774 (Mo.App.1997). Compliance with statutory requirements is mandatory. Id.
As this report is authorized under section 211.455 to be considered in adjudicating whether termination of parental rights is in the best interest of the child, In re S.P.W., 707 S.W.2d 814, 820 (Mo.App.1986), we find that the agency's preparation and submission of this report prior to the trial court's selection of the agency as the preparer and submitter is in conflict with the intent of section 211.455. Point I has merit and is dispositive.
The judgment is reversed.
GARRISON, P.J., and RAHMEYER, J., concur.